# Annie E. Delp, Administratrix of Sebastian Delp, deceased, *v.* Adolph Edlis, Appellant.

*Partnership—Failure to pay in capital—Damages.*

Where one of two partners fails to pay in a portion of his contribution to the capital stock, and the other partner continues in the partnership until the business is closed by mutual consent, the partner in default is liable for interest on the money not paid in, but is not chargeable with speculative profits which might have been earned by the use of said money.

*Partnership—Compensation for services.*

In the absence of a specific agreement, a partner is not entitled to receive compensation for his services in the partnership business.

*Partnership—Receiver—Evidence.*

Where the goods of a partnership have been in part destroyed by fire, and the portion saved has been appraised by the insurance adjusters and turned over to one of the partners, and such goods have been subsequently turned over by the partner's administratrix to a receiver of the firm, and there is no evidence to show that the goods delivered to the receiver were not all the goods that had been received by the partner, the partner's estate will not be charged with the difference between the appraisement of the adjusters and the appraisement made for the receivership.

Argued Oct. 31, 1898. Appeal, No. 26, Oct. T., 1898, by defendant, from order of C. P. No. 1, Allegheny Co., Sept. T., 1892, No. 111, dismissing exceptions to referee's report. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an account between partners.

Exceptions to report of referee.

The referee, Thomas Patterson, Esq., reported the facts to be as follows :

1. Sebastian Delp and A. Edlis entered into partnership in the business of barbers' supplies on July 16, 1888, business to commence September 1, 1888, and to continue for the term of five years from that date.

2. Under the provisions of this agreement Delp was to contribute book accounts and sundries to an undetermined amount, cash amounting to $2,000, and within eighteen months after

entering on business to add to the contributions thus made enough further capital to raise his subscription to $15,000. Delp was not to give any personal attention to the business, which Edlis was to direct as business manager, as his contribution to the business against Delp's capital. Edlis was further to have the right to draw $20.00 per week out of the profits, but Delp was not to draw anything until the end of five years. At the expiration of this period the profits were to be divided. Edlis, however, was to have no interest in the capital which had been contributed by Delp, but the latter was to receive it back on final settlement.

3. Delp's contribution of $2,000 was made at about the time agreed on, and he also turned in the stocks and accounts as provided by the agreement, but at the end of eighteen months he had not contributed the full amount of $15,000. All his contributions to that date, after deducting profits and amounts withdrawn, amounted to the sum of $7,563.18.

4. The total contributions of Delp during the entire continuation of the partnership amounted to the sum of $10,834.29.

5. During the period of the partnership Delp withdrew, largely for merchandise purchased by him from the firm, the sum of $1,840.98.

6. During the same period Edlis withdrew the sum of $4,616.28, and was credited with amounts turned in to the sum of $248.59, leaving his net withdrawals $4,367.69.

7. Of these withdrawals the sum of $3,460 was withdrawals of $20.00 per week on account of profits as stipulated for in the agreement.

8. In addition to the $20.00 per week Delp had arranged with Edlis that the latter might draw some $900 additional in the same manner; the amounts thus drawn aggregated $907.67, making, with the weekly withdrawals, the aggregate above noticed.

9. On several occasions during the continuance of the partnership Edlis requested Delp to pay up the arrears of his subscription to the capital, representing that the business was hampered for the lack of money.

10. To these requests for money on the part of Edlis, Delp excused himself on the ground that he had not means at hand to comply with the request, but that he would attend to it as soon as possible.

11. The books show that down until the fire the business was conducted at a profit. On February 24, 1889, the profits then appearing were $294.32, and on August 1, 1891, $5,331.99.

12. The business was restricted by reason of insufficient money at the disposal of the firm; a larger business would have been done and presumably greater profits earned if the capital had been fully paid up.

13. On January 12, 1892, the place where the business was conducted was destroyed by fire and the contents of the building almost entirely destroyed.

14. Immediately after the fire the remaining stock was appraised by the insurance company at about $6,000.

15. The remaining stock, the books of account, and the insurance policies were delivered by Edlis to Delp, shortly after the fire.

16. Delp died on April 19, 1892, and letters of administration on his estate were taken out by Anna E. Delp, the present plaintiff.

17. After the appointment of the receiver, the insurance policies, books, accounts and assets generally in the hands of Delp were transferred to the receiver.

18. Edlis collected a number of accounts due the firm. These he used in part in paying debts of the concern and the balance he turned over to the receiver.

19. The receiver has filed no final account, but in the proceedings before the referee has filed a statement showing a balance now in its hands of $5,871.29, subject to the charges for commissions and services, and there has also been filed with the referee an agreement of counsel that the referee's findings upon the account in this case shall be paid, as far as applicable out of these funds.

20. The balance shown by the receiver's statement, viz: $5,871.29, is the amount left of the stock, book accounts, insurance, and assets generally, after paying all debts of the concern.

The referee's conclusions of law were as follows:

1. The first question raised by the record, and the one most earnestly pressed by counsel for defendant, is the measure of damages which should be awarded to Edlis by reason of Delp having failed to contribute the capital agreed upon, viz: $15,000, within the term of eighteen months after the date of the articles

of association.   It is strongly urged by counsel for defendant that this is a case in which the profits which might or could have been earned by employing the additional capital should be the measure of the loss.   The general rule is well settled that profits which might have been earned in certain contingencies cannot be allowed as damages for the reason that they are too speculative and remote.   It is also well settled that an exception to this rule exists where the profits are directly within the contemplation of the parties at the time the contract is made, and it may be fairly presumed that they would have been earned but for the breach.   The case here, it seems to the referee, is within the rule and not within the exception.   The profits are not immediately and directly a matter of deal so as to make the failure to contribute to the capital responsible for the loss of any definite profits.   The partners undoubtedly contemplated profits, but they do so in a general way, and not as immediately and directly flowing from any particular operation.   If the rule were, that one failing in his contractual duties to the partnership might be charged with profits, it would be difficult to see why a failure to render services to the firm should not be measured in the same way.   But it has been held that the utmost penalty for failing to give the services specifically agreed on, is to be charged in an accounting with the value of those services: Marsh's Appeal, 69 Pa. 35 ; Clarke v. R. R. Co., 136 Pa. 415. If then the failure of one of the firm to perform the duties which he has directly undertaken, is compensated for by charging him the amount which it would have cost to hire some one else to do the work, it seems clear that the failure to pay the full amount of capital is compensated for by charging against the party the market value of the money unpaid, viz: its legal interest.   This seems to have been the rule adopted in this state. In Brown's Appeal, 89 Pa. 139, interest was refused upon an overdraft of one of the partners.   In Gyger's Appeal, 62 Pa. 79, interest was allowed on a partnership account, although it was stated, as a general rule, that such interest would not be allowed until after balance struck.   It was there stated "that there is no general rule established, but that the allowance or refusal of interest depends upon the circumstances of each particular case." These cases, and the others which are referred to in the opinion therein, seem to establish the principle that the highest compen-

sation which can be allowed a firm for an account due it by one of the partners, is interest on the balance.  See also Story on Partnership, sec. 331.  The referee accordingly concludes that the profits which might have been earned had Delp contributed the full capital as agreed upon cannot be charged against him as damages for his breach of the articles of partnership, for the reason that such damages are speculative, contingent and remote.

2.  The defendant's counsel have urged, as alternative to the question considered above, that if Delp's interest in the firm cannot be charged with the loss of profits which would have been earned on a full contribution of the capital, Edlis, at least, should be allowed to recover a fair compensation for his services, on the theory that the consideration having failed, he is entitled to a quantum meruit.  Whatever the rule may be elsewhere, it is settled in this state that compensation to a partner must always rise from a special agreement, and this, no matter how hard the facts they make it:  Gyger's Appeal, supra. " The reason is that the partner is but attending to his own affairs.  The rule is inexorable, as much so as that between parent and child.  Were it otherwise, we might have a contest between the partners upon the settlement of every partnership account as to the value of their respective services : "  Lindsey v. Stranahan, 129 Pa. 635.  The referee accordingly concludes that Edlis has no claim, in this accounting, for the value of services rendered to the firm over or beyond that fixed by the articles of partnership.

3.  It is further contended by defendant that Delp's estate should be charged with the value of goods, to the difference shown between the appraisement made by the underwriters of the salvage from the fire, and the proceeds of these goods shown by the accounts of the receiver.

The appraisement was $6,000, and the proceeds of the goods sold by the receiver was $934.37.  The difference, or $5,065.63 should be charged to the Delp estate, as property received and unaccounted for.  The mere difference in the appraisement of the goods and the amount they realized at receiver's sale is not sufficient to create a presumption that the goods were purloined or destroyed by the parties having them in charge.  The only evidence on the subject tends to show a delivery by the admin-

istratrix of what she received from her husband. But in the absence of any evidence it would be an unfair and harsh rule which would charge the depository of goods with their depreciation in value between the time of an appraisement and a sale considerably later. The referee accordingly concludes, that there is no ground for charging the Delp estate with the difference in amount between the appraisement of the salvage, made by the insurance adjusters, and the amount for which the goods subsequently sold at receiver's sale.

4. It is contended by the plaintiff's counsel that Edlis should be charged with the amounts withdrawn by him as found above. This amount consists of the $20.00 a week which he drew on account of profits, and the $900 which he sets up in his answer he drew in addition to the $20.00 per week, with the consent of Delp. It seems to the referee that this contention on the part of the plaintiff arises from a misconception of the true meaning of the articles of agreement. Delp represented the capital in the enterprise. Edlis was without means. The articles provided: " The said A. Edlis is to participate in equal shares, one-half in the profits of said barber supply business, in the end of five years. The said A. Edlis to have the right to draw out of said business twenty dollars weekly out of the profits, to the amounts of one thousand and forty dollars yearly. Said Delp shall not draw anything until the end of five years." Edlis was to draw his allowance " out of the profits ; " but profits ascertained at what time ? Clearly, it would seem, as the business went along and showed a profit or loss. This would appear to be the purpose in putting the annual amount of $1,040. This arrangement was evidently intended to give Edlis an allowance for his daily living during the continuance of the business. At the end of the term, in the division of the profits, he was to be charged with this amount in order to equalize the accounts between the partners. It would hardly be reasonable to assume that the parties intended that, even though the business showed a profit each year, yet if at the end of the period a loss was encountered which wiped out the profits, that this contingency should make Edlis a debtor to Delp in the amount of something over $5,000, which he had used in support of himself and family during this time. Nothing but a clear expression of

such an intent would justify such an inference. The instrument is inartificially drawn, but, construed in the light of the circumstances of the parties, it seems to the referee that Edlis was justified in drawing his allowance out of profits actually earned at the time. The evidence shows, and the referee has already found, that the business was conducted at a profit down until the termination of active operations by the fire. As to the additional amount of some $900 which Edlis has drawn in addition to his weekly allowance, his answer sets up the following explanation of this matter: " That defendant drew from the receipts of said business, during the continuance of said partnership, about $900 more than the amount which he was entitled to draw, as set forth in said written articles of co-partnership, but that by oral agreement made between said Sebastian Delp and respondent, said Sebastian Delp agreed with the respondent that he, respondent, should draw the sum of $900 in excess of the amount stipulated in said written agreement, and respondent further says that there is no indebtedness from him to said partnership." This would seem to be responsive to the bill, in explaining fully the partnership arrangement upon which the bill is based: Eaton's Appeal, 66 Pa. 483; Cresson's Appeal, 91 Pa. 168. Furthermore, these averments are corroborated by the uncontradicted testimony that Delp had access to the books, and that the withdrawals of Edlis were known and acquiesced in by him. The referee accordingly concludes that there is nothing due from A. Edlis to the partnership, or to the plaintiff in this proceeding, upon the accounts of A. Edlis & Co.

5. The only remaining conclusion is as to the form of the account to be drawn up. As appears by the receiver's statement, there is on hand with it, the sum of $5,871.29, which is the balance, after the conversion of all the partnership assets, and payment of all the partnership debts. Adding interest on the payments withheld by Delp, from March 31, 1890, to January 12, 1892, would make the additional sum of $790, so that the gross amount thus reached would be $6,661.29. As this does not equal the amount of capital contributed by Delp, there are no profits, and the balance in the hands of the receiver must be awarded to the plaintiff, as repayment on account of the contributions of her intestate. As this becomes really a

distribution of the funds in the receiver's hands, the agreement of counsel having obviated the necessity of awaiting a final account, the costs should be paid out of this fund.

The referee accordingly returns herewith the form of a decree, awarding the moneys in the hands of the Safe Deposit and Trust Company, receiver, less costs, expenses and commissions to be deducted on the final account of the receiver, and also less the costs of this proceeding, to the plaintiff.

The referee's report on exceptions was as follows:

After careful consideration of said exceptions and hearing the argument of counsel therein, the referee adds the following supplemental findings of fact to those already given, in order to present on the record fully the matters upon which the questions of law are raised.

1. The $2,000 to be paid in cash by Delp was not contributed until December 29, 1888, instead of September 1, of that year, as agreed upon.

2. The contributions made by Delp, as noted in the fourth finding of fact in the original report at $10,834.29, were the gross or aggregate contributions made by him, without deduction for any withdrawals made.

3. The fifth finding, in which the withdrawals made by Delp are noted, should be corrected, that about two thirds of the amounts withdrawn were for cash or the equivalent of cash.

4. To the ninth finding is added the further fact that on one occasion when Edlis was demanding from Delp the contribution of his capital he threatened suit unless his demand was complied with.

5. The seventeenth finding is altered, as requested by defendant's counsel, by adding that there is no direct evidence in the case as to whether or not the property delivered to the receiver by Mrs. Delp, administratrix, was or was not all the goods which had been received by Sebastian Delp on account of the firm. The finding which the referee has made that all the goods received by him were delivered by his administratrix to the receiver is based upon the presumption of innocence, as discussed in the conclusions of law, and not upon any direct evidence of the fact.

*Errors assigned* were in dismissing exceptions to referee's report.

*A. Leo Weil*, with him *Charles M. Thorp*, for appellant.—In such a case as this, where profits are the immediate subject of contract, a breach of such contract gives the party damaged the right to recover such profits: 1 Sedgwick on Damages (7th ed.), 163 ; Hunt v. Oregon P. Ry. Co., 1 L. R. A. 842 ; Taylor Mfg. Co. v. Hatcher, 3 L. R. A. 587 ; Gale v. Leckie, 2 Starkie, 107 ; McNeill v. Reid, 9 Bingham, 68 ; United States v. Behan, 110 U. S. 338 ; 2 Bates on Partnership, sec. 780 ; 1 Collyer on Partnership, 331 ; Glover v. Tuck, 24 Wend. 153 ; Richards v. Todd, 127 Mass. 167 ; Davidson v. Thirkell, 3 Grant's Ch. 330; Buckmaster v. Gowen, 81 Ill. 153; Lindley on Partnership, *563.

Edlis is entitled to compensation for his services, and his damages are the value of his services, just as if the contract had been rescinded at the time of dissolution. This theory of damages is sustained by the case of Richards v. Todd, 127 Mass. 167.

In stating the account, Delp must be charged with the full amount of salvage shown to have come into his hands, and credited with the amount shown by him to have been delivered to the receiver.

*William O. McNary*, for appellee.—Where an injury consists of a deprivation of money, the compensation established by the business practice of many generations is the current rate of interest; and such is the measure of damages adopted by the law. The profits which might have been made are too conjectural to be considered : Sedgwick on Damages (8th ed.), sec. 179 ; Greene v. Goddard, 9 Met. 212; Marsh's App., 69 Pa. 35; Clarke v. R. R. Co., 136 Pa. 415 ; Brown's App., 89 Pa. 139 ; Krapp v. Aderholt, 42 Kansas, 247 ; Davidson v. Thirkell, 3 Grant's Ch. 330.

But the appellant is not entitled to damages at all as against Mr. Delp, because (*a*) the failure to pay the capital strictly in accordance with the agreement was acquiesced in by the appellant in such manner as to estop him from claiming damages, (*b*) by the agreement to dissolve the partnership without any reservation of a claim for damages the appellant waived such claim if he ever had any : Herman on Estoppel, sec. 1063.

OPINION BY Mr. JUSTICE GREEN, February 15, 1899:

We are not convinced by the able argument of the learned counsel for the appellant that there was any error in the decree of the court below. On the question of damages growing out of the breach by Delp of the partnership agreement in not paying into the firm the full sum of $15,000 in eighteen months, there is certainly no error in the report of the referee nor in the decision of the court. The referee well shows that there were no unusual or extraordinary circumstances attending this case to take it out of the ordinary rule which excludes speculative profits which might have been earned, from allowance, as the measure of damages in this class of cases. The allowance of imaginary and speculative profits on the ground that they might be earned in the future is so repulsive to the sense of justice, and has been so often and so emphatically condemned by the courts, that it is scarcely possible to conceive of a case in which it should be permitted in any kind of general business. In this case the utmost that is alleged as a breach of the partnership contract is that Delp did not pay in the whole $15,000 as he agreed. He did however pay in a large part of it, some of which was afterwards withdrawn, and the defendant knew perfectly well of the deficiency in the payments. Nevertheless, he continued in the partnership, and the business went on regularly until it was closed by mutual consent. In such circumstances the rule applicable to the case is to charge the partner in default with interest on the money not paid in. This rule was followed by the referee with entire correctness.

Another claim made by the defendant was that he should be allowed compensation for his services on the principle of quantum meruit. By the terms of the partnership agreement Edlis was to have the right to draw out of the profits of the firm $20.00 weekly. This right he exercised throughout the partnership, having drawn out money to the amount of $4,367.67, as was found by the referee. There was no specific agreement that he should receive compensation for his services as partner, and the rule in such cases is that the partner is not entitled to any compensation. In Lindsey v. Stranahan, 129 Pa. 635, it is said: "The reason is that the partner is attending to his own affairs. The rule is inexorable, as much so as that between parent and child. Were it otherwise we might have a contest

between the partners upon the settlement of every partnership account as to the value of their respective services." We see nothing in the case to take it out of the operation of the rule.

As to the claim for the value of the salvage from the fire it is only necessary to say that it was easily susceptible of proof that the goods delivered to Delp were not all turned over to the receiver. The comparison of the inventories made when the goods were delivered by the administratrix of Delp to the receiver, would have determined the matter. But nothing of that kind took place. Nor was any evidence given to show that the goods delivered to the receiver were not all the goods that were received by Delp. The difference in estimated value would not necessarily show anything more than the difference in the views of two different sets of appraisers. This is not enough to justify a surcharge of the amount of the difference. We are of opinion that upon the whole case the decree of the learned court below was correct.

The decree of the court below is affirmed and the appeal is dismissed at the cost of the appellant.