## Rosenfeld *v.* Rosenfeld, Appellant.

40

Argued March 26, 1957.   Before JONES, C. J., BELL,
CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Elder W. Marshall,* with him *John A. Metz, Jr., Carl E. Glock, Jr., Leonard L. Scheinholtz, Reed, Smith, Shaw & McClay* and *Metz, McClure & MacAlister,* for appellants.

*William H. Eckert,* with him *Samuel Kaufman, Benjamin Jacobson, Milton W. Lamproplos* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, June 28, 1957:

These are appeals by four of the defendant partners from that portion of a final decree in equity, affirming the adjudication of the chancellor, which ordered the defendant partners to account to the partnership and the plaintiff partner for certain salaries previously paid to them under a written salary agreement.

Plaintiff brought this suit primarily to enforce a stock proxy held by him in a dry cleaning business conducted by a partnership and two corporations as a unitary enterprise. The individual defendants are the other partners, and are also the other stockholders in the two corporations named as defendants. Defendants denied the validity of the proxy and sought to restrain plaintiff from exercising it on the ground that he was interested in a competing dry cleaning busi-

ness. The chancellor held in favor of the plaintiff and decreed that the proxy was valid and that plaintiff's vote thereof should be recognized. No exceptions were taken to the findings, conclusions of law, or decree nisi on this principal issue, and appellants make no objection to that part of the final decree.

The facts found and supported by the evidence may be summarized as follows: Plaintiff's father, Isadore Rosenfeld, was one of the founders of a partnership known as Liberty Cleaners & Dyers (hereinafter called Liberty) engaged in the wholesale dry cleaning business, and when defendant David Rosenfeld, plaintiff's uncle, joined him shortly thereafter, each owned a 50% interest in the firm. In 1933, defendant Fisk Realty Co., Inc. was incorporated in Pennsylvania to hold title to the real estate on which the cleaning plant was operated. Two years later the partnership entered into the retail dry cleaning business and defendant Quaker Cleaners, Inc. was formed to operate retail stores which were opened, the receipts therefrom belonging to Liberty. In 1938, Isadore Rosenfeld gave his son, Samuel Rosenfeld, plaintiff, one-half of his 50% interest. Three years later defendants Harry Rosenfeld and Jack Rosenfeld were admitted to the partnership; they having acquired a 15% and 10% interest respectively from David Rosenfeld. In 1946 defendant David Rosenfeld II purchased a 7½% interest from Isadore, and defendant Sidney Singer bought a similar interest from plaintiff. Isadore died on April 27, 1951, and his interest passed to, and now belongs to, plaintiff, Samuel Rosenfeld, either individually or as executor of his father's estate. At the time this suit was instituted, and until the adjudication and thereafter, the interests of the partners in the partnership and the corporations have been as follows: plaintiff, 35%; David Rosenfeld, 25%; Harry Rosenfeld,

15%; Jack Rosenfeld, 10%; David Rosenfeld II, 7½%; and Sidney Singer, 7½%.

When David Rosenfeld II and Sidney Singer became partners in 1946, they each signed a proxy giving to Isadore and Samuel Rosenfeld and the survivor of them the right to vote their stock in the two corporations, thus enabling the survivor to retain 50% control of the business. At the same time, all the individual partners entered into written articles of partnership. Paragraph Thirteenth of these partnership articles, which were in effect on April 27, 1951 when Isadore Rosenfeld died, provided that the partnership should terminate on the sixtieth day after the death of Isadore Rosenfeld.

Before 1937 Liberty's profits were modest, but as more Quaker retail stores were opened, Liberty's profits increased to large and substantial amounts. Up until 1948, plaintiff did considerable work for the partnership, including the fitting out and opening of various Quaker retail stores. Plaintiff has not been active in the business since 1948, but this is due to appellants' having excluded him from participation.[1] Appellants admit that they do not want plaintiff to resume active participation in the business.

Prior to Isadore's death on April 27, 1951, the defendant partners had been receiving weekly salaries as follows: David Rosenfeld, $100; Harry Rosenfeld, $250; Jack Rosenfeld, David Rosenfeld II and Sidney Singer, each $125. On or about June 29, 1951, all the remaining partners entered into a written salary agreement (under seal and under the provisions of the Uniform Written Obligations Act), which provided that the salaries for the defendant partners who were actively en-

---

[1] Sidney Singer, one of the defendants, did not join the other defendants in this conduct toward plaintiff and is not an appellant from the decree of the court below, although adversely affected by it.

gaged in the operation of the partnership business, should be increased to the following amounts per week: David Rosenfeld, $600; Harry Rosenfeld, $550; Jack Rosenfeld, $325; David Rosenfeld II and Sidney Singer, each $275. This written salary agreement states that the increased salaries were to be effective on July 1, 1951, but is silent as to its term of duration. The agreement increased the salaries of the defendant partners by an aggregate of $67,600 annually, and reduced plaintiff's 35% share of the profits by $23,600 per year. The chancellor found that at the time this agreement for increased salaries was entered into, the individual defendants agreed that they would continue to recognize plaintiff's 50% control of the business and that plaintiff's share of the profits would be protected. Appellants repudiated their promise; they continued to exclude plaintiff from active participation in the business, attempted to repudiate the voting proxy involved in the principal issue in the court below, tried to remove plaintiff as an officer of the defendant corporations, and otherwise sought to reduce his rights to a 50% voice in the management and a 35% share of the profits of the business. On March 31, 1952, plaintiff notified the defendant partners by letter that he no longer agreed to the salaries specified in the agreement of June 29, 1951 and demanded that the salaries be reduced to the scale in effect prior to the agreement. Defendants refused to lower their salaries, but on the contrary, on May 25, 1953, appellants, over plaintiff's protest, signed another instrument again raising the salaries of Jack Rosenfeld, David Rosenfeld II, and Sidney Singer. The chancellor found that the salaries which the defendants are receiving are consuming an unconscionable proportion of the profits of the business, and this disproportion is growing, due to the substantial decline in the profits of the business; though

plaintiff owns 35% of the business, he is receiving a much smaller and unfair percentage of its earnings, and no salary whatsoever. The chancellor and the unanimous court en banc held that the individual defendants must account for the salaries which they drew from the partnership after April 1, 1952, the date when plaintiff informed them that he no longer agreed to the salary increase, to the extent that they exceeded the amounts of their respective salaries prior to July 1, 1951.

Section 51 of the Uniform Partnership Act, March 26, 1915, P. L. 18, part IV, §18, 59 PS §51, provides: "The rights and duties of the partners in relation to the partnership shall be determined, *subject to any agreement between them,* by the following rules: . . . (f) No partner is entitled to remuneration for acting in the partnership business, . . ." (Emphasis supplied). The law is clear that in the absence of an agreement to the contrary, a partner is not entitled to compensation beyond his share of the profits, for services rendered by him in performing partnership matters: *Kirby v. Kalbacher,* 373 Pa. 103, 95 A. 2d 535; *Lacey v. Rutter,* 366 Pa. 17, 76 A. 2d 389; *Rolshouse v. Wally et al.,* 272 Pa. 506, 116 A. 474; *Delp v. Edlis,* 190 Pa. 25, 42 A. 462; *Lindsey v. Stranahan,* 129 Pa. 635, 18 A. 524; *Marsh's Appeal,* 69 Pa. 30; 40 Am. Jur., §120. In the absence of a contract, a right to compensation arises only where the services rendered extend beyond normal partnership functions: *Bracht v. Connell et al.,* 313 Pa. 397, 170 A. 297; *Herman v. Pepper et al.,* 317 Pa. 349, 176 A. 201. This is basic and fundamental under partnership law.

Appellants do not contend that the work they performed for the partnership was beyond normal partnership matters. They do contend that by virtue of the agreement of June 29, 1951, increasing the sala-

ries of the defendant partners, they thereby came within the exception of Section 51 of the Uniform Partnership Act quoted supra, that this contract was binding on the plaintiff, and therefore he could not lawfully terminate it by his notice of March 31, 1952.

As previously noted, the agreement in question is silent with respect to its intended duration. Appellants contend that the salary agreement was intended to have a duration co-extensive with the life of the partnership itself. In *Cummings v. Kelling Nut Company*, 368 Pa. 448, 451, 452, 84 A. 2d 323, this Court said: "The general rule is that when a contract provides that one party shall render services to another, or shall act as an agent, or shall have exclusive sales rights within certain territory, but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will: Coffin v. Landis, 46 Pa. 426; Weidman v. United Cigar Stores Company, 223 Pa. 160, 72 A. 377; Jones v. Pittsburgh Mercantile Co., 295 Pa. 219, 145 A. 80; Slonaker v. P. G. Publishing Company, 338 Pa. 292, 13 A. 2d 48; Price v. Confair, 366 Pa. 538, 79 A. 2d 224; Lucacher v. Kerson, 158 Pa. Superior Ct. 437, 45 A. 2d 245. The burden is on the plaintiff in such cases to overcome the presumption by showing facts and circumstances establishing some tenure of employment: Jones v. Pittsburgh Mercantile Co., supra. The intention of the parties governs. . . .". To the same effect is *Lubrecht v. Laurel Stripping Company*, 387 Pa. 393, 127 A. 2d 687. In the instant case, therefore, the burden was upon the defendant partners who were asserting to the contrary, to overcome the presumption that the salary agreement in question was terminable at will.

After a careful reading of the record, we are in complete accord with the conclusion of the court below,

that the salary agreement was not intended to be co-extensive with the life of the partnership. As was well said by the chancellor, speaking for the court en banc: "The salary agreement was obviously entered into as an amicable attempt to provide a mutually satisfactory solution to a situation which was responsible for intense bad feelings on both sides. But there is nothing in the circumstances to indicate that the partners intended a definite term of duration for the agreement. On the contrary, under the circumstances it appears that the salary schedule was to be a working arrangement to restore some degree of harmony among the partners, and we think it is the only fair inference that this agreement for weekly compensation was to continue only so long as the harmonious relationship remained between the two dissident factions. It is a reasonable conclusion that the parties deliberately and designedly refrained from binding themselves to any permanency of the relationship, that it was intended to be subject to change depending upon the situation. Defendants' own conduct indicates this, for they later ignored the writing and granted further increases, although they now rely upon the alleged continuously binding effect of the agreement as to the plaintiff. At any rate the evidence discloses no proof at all of any mutual understanding either as to a definite term or as to reasonable time of existence for the agreement."

. . .

"The salary schedule itself specifies no term, and its only reference with regard to time is to weekly compensation. Obviously the partners could not have intended that their agreement should be perpetual, regardless of the fortunes of their business, the comparative activity of the various partners, the value of the dollar, and other pertinent factors."

Appellants contend that since after Isadore Rosenfeld's death in April, 1951, the partnership was one at

will, there was no obligation on their part to continue to operate the business under the old salary schedule, and the increased salary agreement was intended to compensate them as long as the partnership thereafter continued. However, the increased salary agreement contains nothing whatsoever obligating the defendant partners to continue working for the partnership for any period of time. Admittedly the partnership is one at will, and any of the defendant partners could have stopped, and can stop, working for the partnership at any time. Nor is there any testimony at all that the partnership would have been dissolved and the business discontinued unless plaintiff signed the increased salary agreement, nor is there any testimony that the appellants threatened to do so. Moreover, the fact that appellants increased the salaries again in 1953, over plaintiff's protest, is evidence that even they did not consider the increased salary agreement to be binding as long as the partnership lasted. Appellants admit that the increase in 1953 was unlawful, but attempt to justify it on the ground that they erroneously believed that the salaries could be altered by majority vote. But if the increased salary agreement was intended to be binding for the duration of the partnership, then, being a contract, obviously it could not have been changed by a majority vote of the partnership, but would need the consent of all the parties to the contract.

Appellants rely on the case of *Lubrecht v. Laurel Stripping Company,* supra, but there the jury found the evidence sufficient to overcome the presumption that the contract for personal services there involved was terminable at will, while in the instant case there was no finding that the partners intended a definite term of duration for the agreement, but the contrary, as appears from the opinion of the court en banc.

Appellants contend that because of the parol evidence rule, there was no competent evidence to support

the chancellor's finding that the inducement for plaintiff's entering into the written increased salary agreement was defendants' promise to recognize plaintiff's 50% control of the business. Plaintiff so testified at the trial and his testimony was admissible, not to show consideration for the agreement but as part of the surrounding circumstances in ascertaining the intention of the parties as to the duration of the agreement. As stated by the court below: ". . . A full inquiry into the circumstances of the increased salary schedule, the inducement, and what the parties intended to accomplish thereby was certainly proper and even necessary if the Court was to determine just how long the new salaries were supposed to remain in effect, and the reason and justification for Samuel Rosenfeld's attempt to end the increases. . . .". Moreover, even although plaintiff had a right to terminate the agreement at will, the parol evidence in question established that there was justification for his action and that he was not motivated by malice or bad faith which might on equitable principles have adversely affected his right to an accounting and restitution of the salary increases. In order to exclude parol evidence the writing must be a complete contract, importing a full legal obligation with no uncertainty as to the terms of the agreement: *Gianni v. R. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791; *Garrison, Receiver v. Salkind,* 285 Pa. 265, 132 A. 125; *Witt v. Crawford,* 173 Pa. Superior Ct. 98, 93 A. 2d 909. If the writing does not fully state the entire agreement among the parties, the parol evidence rule has no application: *Yezbak v. Croce,* 370 Pa. 263, 88 A. 2d 80; *International Milling Company v. Hachmeister, Inc.,* 380 Pa. 407, 110 A. 2d 186. The salary agreement here in question does not purport to be a complete integrated agreement, but merely recites the increased salaries the defendant partners are to receive. When a contract is silent on its

duration, parol evidence is always admissible to show the circumstances surrounding the execution of the contract, the situation of the parties, the objects they apparently had in view, and the nature of the subject matter of the agreement, to show whether the agreement was to endure for a reasonable time or for some particular period: *Fessman Estate*, 386 Pa. 447, 451, 126 A. 2d 676; *Lubrecht v. Laurel Stripping Company*, supra.[2]

However, even if the parol evidence complained of is completely removed from the picture, the conclusion must still be that the defendants were not entitled to the increased salaries because of their failure to meet their burden of proof of facts and circumstances sufficient to overcome the presumption that the agreement as to salaries was terminable at will: *Cummings v. Kelling Nut Company*, supra; *Lubrecht v. Laurel Stripping Company*, supra. It was on this ground that the court properly based its decision and not on the oral promises of the appellants.

Appellants assert that plaintiff is not entitled to have specific performance from defendants and at the same time to rescind his agreement and receive restitution. This contention is based on the assumption, arguendo, that plaintiff signed the salary agreement of June 29, 1951 in consideration of defendants' promise to recognize his 50% control of the business. In the first place, the court did not base its decision on a breach of this promise by defendants but on plaintiff's right to terminate the agreement at will. In the

---

[2] It may be observed that at no time did defendants raise any question as to the competency of such evidence, either by answer or preliminary objection in the pleading stage of the suit, or by objections or motion to strike at the trial. Indeed the plaintiff's testimony that there was such oral agreement was elicited by the defendants themselves on cross-examination.

second place, this contention is not included in appellants' "Statement of Questions Involved" and therefore need not be considered: See Rule 35, Rules of the Supreme Court of Pennsylvania; *Burke Appeal*, 378 Pa. 616, 108 A. 2d 58; *Blue Anchor Overall Co., Inc. v. Pennsylvania Lumbermens Mutual Insurance Company*, 385 Pa. 394, 123 A. 2d 413. Lastly, by the decree of the court the plaintiff did not get specific performance of the agreement by the defendants to recognize the plaintiff's 50% control or voice in the management of the business but only specific performance of the proxy given by David Rosenfeld II which was executed and delivered more than five years before the increased salary agreement. Since this agreement was terminable at will, plaintiff did not rescind any contract when he exercised the legal right of a partner to refuse to consent to salaries being paid other partners in carrying on the regular business of the partnership.

There remains for consideration appellants' contention—technical rather than substantial—that there is no express finding or conclusion that the defendants breached the oral agreement that defendants would continue to recognize plaintiff's 50% control of the business, and no conclusion of law that the salary agreement was terminable at will or any findings supporting such a conclusion. Since the court based its decision, as above stated, on the right of the plaintiff to terminate at will the increased salary schedule contained in the written agreement of June 29, 1951, a finding that defendants breached the oral agreement, was not necessary to the decision reached. As to the lack of a formal finding or conclusion that the agreement in question was terminable at will, no such complaint was made in the court below by the exceptants, now appellants. The defendants filed only three exceptions to the chancellor's adjudication and none of them

complained that the chancellor had erred in not making a formal finding of any cognate fact, or in not making any conclusion of law that was necessary. If the defendants had complained in the court below that there was no formal finding or conclusion that the salary agreement was terminable at will, the learned chancellor could and doubtless would have added formal findings. See *Klick v. Gernert*, 220 Pa. 503, 506, 69 A. 1034; *Sautter et ux. v. Rowland*, 285 Pa. 212, 216, 131 A. 733; *Lynch and Reagan v. Snowdon*, 72 Pa. Superior Ct. 509, 512-513.

We have repeatedly held that this Court will not consider questions not raised in the court below: *Sherwood v. Elgart*, 383 Pa. 110, 115, 117 A. 2d 899; *Schade v. Allegheny County Institution District*, 386 Pa. 507, 513, 126 A. 2d 911. We have also on more than one occasion refused to remand a case for compliance with a technical rule of procedure where the result would not be changed and substantial justice has been done. See *Cooley v. Houston*, 247 Pa. 590, 592, 93 A. 624; *Stone v. Stone et al.*, 277 Pa. 277, 278, 121 A. 500; *Vollet v. Pechenik*, 380 Pa. 342, 349, 110 A. 2d 221. In the *Vollet* case we said, at page 349: "The Chancellor should have prepared formal findings of fact and conclusions of law in compliance with Rule 1517 of the Pennsylvania Rules of Civil Procedure. We do not see, however, what could be gained by our remanding the case for that purpose. . . .". There may be added that again appellants' contention now being considered is not covered by their "Statement of Questions Involved".

A thorough review of the entire record in this case satisfies us that the learned court below arrived at a correct and just disposition of the issues involved, and due consideration of all of the appellants' contentions properly before us discloses no good reason for any modification in the decree entered.

Decree affirmed at the cost of appellants.