ALTMAN, Sydney A., Appellee,

v.

ALTMAN, Ashley J. and Altman, Ashley J., Executor of the Estate of Altman, Sandra S., deceased.

Appeal of Ashley J. ALTMAN, Individually and as Executor of the Estate of Sandra S. Altman.

No. 80–2106.

United States Court of Appeals, Third Circuit.

Argued Jan. 15, 1981.

Resubmitted April 16, 1981.

Decided June 29, 1981.

Philip M. Hammett, James D. Crawford (argued), David S. Petkun, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.

H. Robert Fiebach (argued), Norman Goldberger, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and ROSENN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Ashley Altman appeals from a judgment of the district court ordering the dissolution of five partnerships and directing that the assets of the partnerships be liquidated and distributed to the partners. Pennsylvania law governs the disposition of this diversity action.

### I.

From 1952 to 1973, Sydney Altman and Ashley Altman operated a number of partnerships engaged in real estate construction and management in southeastern Pennsylvania. During this period the two brothers shared equally in the management and control of the partnerships, and through their joint efforts they built the businesses into very profitable and substantial enterprises. Sydney and Ashley received identical salaries, and each brother was permitted to charge certain personal expenses to the partnerships. The brothers agreed that the amount of such expenses would be equal. Therefore, if one brother charged more personal expenses to the partnerships, he would pay to the other brother one-half the amount by which his personal expenses exceeded those of his brother.

In January 1973, Sydney moved to Florida to establish residency in that state for the purpose of obtaining a divorce. The brothers discussed Sydney's move at this time, and they agreed that Sydney would return to Pennsylvania after his divorce and resume full-time duties with the partnerships. During the first six months after he moved to Florida, Sydney commuted to Pennsylvania every week to work for two to three days. In July 1973, Ashley suggested that Sydney need only return to Pennsylvania once a month until his divorce became final. Sydney's attorney subsequently advised him not to return to Pennsylvania until his marital problems were resolved.

Sydney told Ashley in November 1973 that he was considering retiring from the Altman businesses and remaining in Florida permanently. The brothers discussed Sydney's retirement in general terms, and Ashley agreed to consult with their Philadelphia accountant in an effort to develop a satisfactory retirement agreement. The brothers disagreed on the events that occurred after this conversation. Ashley claimed that Sydney accepted the account-

ant's recommendations, and that Sydney's retirement was implemented on the partnerships' books as of December 31, 1973. Sydney, however, maintained that the brothers never progressed beyond preliminary discussions until the fall of 1974, when he received a one-sided retirement proposal prepared at Ashley's direction by the partnerships' attorney.

When an agreement could not be reached, Sydney brought this action in the district court seeking judicial dissolution of the partnerships. He alleged that Ashley had violated the partnership agreements, misappropriated partnership assets, and excluded Sydney from the businesses. Ashley maintained that the partnerships had been dissolved as of December 31, 1973 because Sydney had retired on that date.

After a nonjury trial, the district court held that neither the conduct of Sydney nor that of Ashley had dissolved the partnerships prior to the institution of this suit. The court stated that under Pennsylvania law the retirement of a partner causes a dissolution only when it is tantamount to a "definite and unequivocal" expression of a will to dissolve the partnership. The court found that Sydney's desire to retire "never progressed beyond a vague general proposal," and that his absence from Pennsylvania was with Ashley's consent. In addition, the court found that Ashley's alleged exclusion of Sydney from the partnerships did not cause a dissolution because Ashley intended to retain Sydney as a partner "at least to the extent that the partnerships would continue to take full advantage of Sydney's capital interest."

The district court held, however, that Sydney was entitled to a judicial dissolution of the partnerships because Ashley violated the partnership agreements and Pennsylvania law by unilaterally paying himself certain salaries. The court found that Ashley's conduct had "progressed to a point which makes it impracticable for the partnerships to continue," and dissolution was ordered as of June 6, 1977, the date of the court's decision. In addition, Ashley was directed to pay Sydney $153,750.67 to equalize partnership distributions, salaries, and reimbursed personal expenses. Finally, the court appointed a master to liquidate the partnerships' assets and to distribute the net proceeds to the partners.

II.

Ashley argues that the district court erred in finding that the partnerships had not been dissolved as of December 31, 1973. This argument is based upon three contentions: (1) that sworn statements made by Sydney during the Florida divorce proceedings estopped him from denying he had not retired; (2) that the district court's findings of fact concerning Sydney's retirement were clearly erroneous; and (3) that the district court incorrectly interpreted Pennsylvania law.

A.

During the course of the Florida divorce proceedings, Sydney stated three times under oath that he had retired from the partnerships. In addition, Sydney's Florida counsel represented to the Florida court that it was undisputed that Sydney "has retired and severed his business relationship with his brother in Pennsylvania." Ashley argues on appeal that the district court should have held that Sydney is estopped by these statements from denying that he had retired from the partnerships. Citing this court's decisions in *Scarano v. Central Railroad*, 203 F.2d 510 (3d Cir. 1953), and *United States v. Webber*, 396 F.2d 381 (3d Cir. 1968), Ashley asserts that "a party who obtained a material advantage from his sworn representations in a court of law, will not be heard in a second proceeding to contradict his earlier sworn statement of the facts for a new material benefit." Ashley maintains that judicial estoppel can be applied even though the proceedings take place in different courts and involve different parties.

Our review of the record reveals that Ashley did not raise this issue in the district court. He did not plead judicial estoppel or argue to the court that Sydney should be estopped from denying he had retired by his

statements in the Florida proceedings.[1] We have emphasized that "absent exceptional circumstances, an issue not raised in the district court will not be heard on appeal." *Franki Foundation Co. v. Alger-Rau & Associates, Inc.*, 513 F.2d 581, 586 (3d Cir. 1975). Exceptional circumstances have been recognized when the public interest requires that the issue be heard or when manifest injustice would result from the failure to consider the new issue. *Id.; see Princeton Community Phone Book, Inc. v. Bate*, 582 F.2d 706, 708 n.1 (3d Cir.), *cert. denied*, 439 U.S. 966, 99 S.Ct. 454, 58 L.Ed.2d 424 (1978) (first amendment issue not raised in district court considered on appeal because of great public interest); *Richerson v. Jones*, 572 F.2d 89, 97 (3d Cir. 1978) (public interest served by hearing on appeal issue concerning exhaustion of administrative remedies under title VII). In addition, we have considered the merits of an issue raised for the first time on appeal when the new theory was advanced to affirm the district court and prejudice would not result to the other party.[2] *See Jurinko v. Edwin L. Wiegand Co.*, 477 F.2d 1038 (3d Cir.), *vacated on other grounds*, 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973); *cf. Walker v. Sinclair Refining Co.*, 320 F.2d 302, 305 (3d Cir. 1963) (district court should

not be reversed on grounds not argued before it).

We find no exceptional circumstances in this case that would allow Ashley to raise judicial estoppel on appeal. No great public interest would be advanced by consideration of this issue. Moreover, Ashley offers no explanation for his failure to raise judicial estoppel in the district court, and we are not aware of any obstacles that prevented him from doing so. *Cf. Princeton Community Phone Book*, 582 F.2d at 708 n.1 (first amendment issue heard for first time on appeal because controlling Supreme Court case decided after district court's decision). Therefore, no manifest injustice to Ashley would result if we do not consider this issue. In addition, the new issue raised on appeal is presented as a ground for reversing the district court. As a result, we find that the rule barring a party from raising new issues on appeal precludes our consideration of Ashley's judicial estoppel argument.

### B.

■■■ Ashley argues that the factual findings of the district court relating to Sydney's intention to retire and the reasons for his absence from Pennsylvania are clearly erroneous.[3] In support of this argu-

---

**1.** Ashley notes that he confronted Sydney with his Florida statements at trial and argued to the court that in light of those statements Sydney's testimony that he had not retired should not be "believed." As a result, Ashley maintains that the "facts" supporting judicial estoppel were presented to the district court, and that any failure to use the term estoppel was merely a technical omission. However, under the estoppel theory now espoused by Ashley, Sydney's statements in the Florida proceedings would be deemed to have conclusively established the fact of his retirement in this litigation. Thus, Ashley's failure to use the term estoppel in the district court cannot be said to be a mere technical omission. *Cf.* Fed.R.Civ.P. 8(c) (estoppel must be pled as affirmative defense).

**2.** We do not read *Universe Tankships, Inc. v. United States*, 528 F.2d 73 (3d Cir. 1975), as creating a rule that an issue may be raised for the first time on appeal solely because prejudice to the other party would not occur.

**3.** Ashley also contends that this court does not have to apply the clearly erroneous standard in this case. Citing *Orvis v. Higgins*, 180 F.2d 537

(2d Cir.), *cert. denied*, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950), Ashley asserts that this court may freely substitute its own findings for those of the district court when documentary and undisputed evidence renders the credibility of the oral testimony extremely doubtful. However, this court has exercised de novo review of a district court's factual findings only when those findings are based solely on nondemeanor evidence. *See, e. g., Government of the Virgin Islands v. Gereau*, 523 F.2d 140, 144 (3d Cir. 1975), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir.), *cert. denied sub nom. Universal Athletic Sales Co. v. Pinchock*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). Here, the findings of the district court were based in part on its determination of the credibility of the witnesses testifying before it. In addition, even if we were to adopt the *Orvis* rule, the documentary and undisputed evidence in this case does not render the oral testimony "extremely doubtful."

ment, Ashley directs our attention to evidence in the record indicating that Sydney not only intended to retire but in fact had done so. Ashley notes that Sydney did not return to the partnerships' office from October 1973 until after filing this suit in September 1975, leaving Ashley with the responsibility for operating the businesses. According to Ashley, the district court's finding that this absence was with Ashley's consent is unsupported by the record. Ashley also emphasizes that two "disinterested" witnesses testified that Sydney told them he was staying in Florida on a permanent basis and retiring from the partnerships. Furthermore, Ashley contends that the district court erred in adopting Sydney's "unsupported, self-serving" testimony that he did not retire. Ashley maintains that Sydney's testimony was completely contradicted by "contemporaneous documentary admissions by Sydney, under oath," in the Florida divorce proceedings.

Our role when reviewing a district court's factual findings is not to "substitute findings we could have made had we been the fact-finding tribunal; our sole function is to review the record to determine whether the findings of the District Court were clearly erroneous, i. e., whether we are 'left with the definite and firm conviction that a mistake has been committed.' " *Speyer, Inc. v. Humble Oil & Refining Co.*, 403 F.2d 766, 770 (3d Cir. 1968), *cert. denied*, 394 U.S. 1015, 89 S.Ct. 1634, 23 L.Ed.2d 41 (1969) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). Furthermore, Federal Rule of Civil Procedure 52(a) states that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." In this case, the district court was confronted with the conflicting testimony of Sydney and Ashley on the issue of Sydney's retirement and his absence from Pennsylvania. In resolving this conflict, the district court stated that "Sydney Altman has the edge on credibility." This credibility determination is not rendered incorrect merely by the fact that Sydney stated in the Florida proceedings that he had retired. Except for his estoppel

argument, Ashley does not contend that the district court was bound by these statements in weighing the evidence before it.

Moreover, the district court's credibility determination and subsequent finding that "Sydney's intention to retire never progressed beyond a vague and general proposal" are supported by other evidence in the record. For example, a document prepared by the partnerships' attorney in September 1974 proposing a "plan to clarify the situation" supports an inference that the parties had not reached an understanding on Sydney's status. In addition, it is undisputed that Ashley made no attempt to transfer Sydney's capital share to him, to liquidate the assets of the partnerships, or to otherwise dissolve the partnerships. In fact, the 1974 tax returns of the partnerships listed Sydney as a fifty-percent partner, and in January 1974 Ashley executed an affidavit stating that he and Sydney were partners. Later that year Ashley asked Sydney to sign a promissory note in connection with partnership financing. Sydney signed the note, thereby exposing himself to general liability as a partner.

The evidence bearing upon Sydney's alleged retirement from the partnerships presents close questions of fact, but our review of the record does not leave us with "the definite and firm conviction that a mistake has been committed." As a result, we conclude that the district court's findings of fact relating to Sydney's retirement and absence from Pennsylvania are not clearly erroneous.

### C.

Finally, Ashley argues that the district court incorrectly interpreted Pennsylvania law when it concluded that the partnerships had not been dissolved as of December 31, 1973. The court stated that under Pennsylvania law dissolution is caused by the "definite and unequivocal" express will of any partner. However, Ashley maintains that the "test of whether a partnership is dissolved by the retirement of a partner is whether the partner expresses or manifests

an intention to dissolve the partnership through retirement or some other act." He contends that he need only show that Sydney either retired or withdrew from active participation in the business of the partnerships to prove that a dissolution had occurred. Furthermore, he argues that retirement and withdrawal may be inferred from the actions of the retiring partner as well as by his express will. According to Ashley, because the district court erroneously concluded that Pennsylvania law requires a definite and unequivocal expression of a will to dissolve, it did not focus on Sydney's conduct in leaving Pennsylvania and not participating in the businesses.

Even if we accept Ashley's arguments concerning the proper interpretation of Pennsylvania law, he would not be entitled to a reversal of the district court's holding that the partnerships were not dissolved as of December 31, 1973. We have upheld the district court's findings that Sydney had not retired and was absent from Pennsylvania with Ashley's consent. Given these factual findings, we do not believe that a dissolution of the partnerships occurred even if the test stated by Ashley represents Pennsylvania law; Sydney's actions did not manifest an intention to dissolve the partnerships either through retirement or withdrawal from active participation in the businesses. Thus, we do not reach the question whether the district court correctly interpreted Pennsylvania law.

### III.

Ashley also challenges the district court's holding that he is not entitled to compensation beyond his share of the partnership profits for managing the partnerships between August 1973 and June 1977. The court found that Ashley breached the partnership agreements by unilaterally paying himself salaries from the partnerships in excess of what the brothers had agreed upon. The court concluded that under Pennsylvania law the services rendered by Ashley did not justify additional compensation.

The Pennsylvania Supreme Court has emphasized that "in the absence of an agreement to the contrary, a partner is not entitled to compensation beyond his share of the profits, for services rendered by him in performing partnership matters. . . . [A] right to compensation arises only where the services rendered extend beyond normal partnership functions." *Rosenfeld v. Rosenfeld*, 390 Pa. 39, 45, 133 A.2d 829, 832 (1957); *see Kirby v. Kalbacher*, 373 Pa. 103, 105, 95 A.2d 535, 540 (1953) (services required only for successful operation of existing partnership not beyond normal partnership functions). Ashley, however, does not expressly contend that the services he performed went beyond normal partnership functions. Instead, he relies on *Greenan v. Ernst*, 408 Pa. 495, 508–10, 184 A.2d 570, 577–78 (1962), in which the Pennsylvania Supreme Court concluded that it would be "highly inequitable" to deny compensation to an active partner who had assumed sole responsibility for the management of a partnership when the inactive partners either "could not or would not" assume any responsibility. The court noted that the "skill and efforts" of the active partner produced large profits for the partnership and therefore benefitted the other partners.

In contending that it would be highly inequitable in this case to deny compensation, Ashley emphasizes that after August 1973 the entire management and supervision of the partnerships were left to him. He asserts that he not only preserved the partnerships' properties but also maximized profits during this period. In addition, Ashley points to expert testimony at the trial emphasizing the high caliber of his management of the partnerships.

Ashley apparently is contending that compensation is awarded under Pennsylvania law whenever it would be highly inequitable not to do so. However, *Greenan* does not support this contention. The *Greenan* court reaffirmed the *Rosenfeld* rule, and it found that the services in question extended beyond normal partnership functions. Thus, Ashley must show more than the fact that a failure to award compensation would be highly inequitable; he must also show

that his services extended beyond normal partnership functions.

In this case, the district court concluded that Ashley's services did not warrant compensation in excess of his share of the partnership profits. In reaching this decision, the court necessarily found that the services performed by Ashley did not extend beyond normal partnership functions. We recognize that in *Greenan* the Pennsylvania Supreme Court appeared to relax the definition of "beyond normal partnership functions" by allowing compensation to a partner who had assumed responsibility for the continued operation of an existing partnership. However, the critical factor in *Greenan* was that the active partner had taken an existing partnership and expanded it substantially beyond its previous size and scope. In contrast, the services rendered by Ashley maintained the operation of existing businesses in the same manner as they had been operated before Sydney's departure. In addition, unlike the situation in *Greenan*, the lack of participation in the partnerships by Sydney was with the consent of Ashley. Thus, the district court's factual finding that Ashley's services did not warrant compensation beyond his share of the partnership profits was not clearly erroneous. Although this result may appear harsh to some, we believe that the narrow scope of our review of the district court's factual findings and the relevant principles of Pennsylvania law require this conclusion.

### IV.

The district court also directed Ashley to pay Sydney an amount equal to one-half of the personal expenses charged to the partnerships by Ashley between January 1974 and June 1977. The court found that this payment was necessary to equalize the distribution of partnership earnings. Ashley contends that this award was erroneous. He asserts that the practice of the brothers before 1974 was to charge such personal expenses to the partnerships, and that he merely continued this practice after Sydney moved to Florida. Ashley also notes that the partnership agreements provided that "the partners shall be reimbursed by the partnership for their out-of-pocket personal expenses." In addition, he apparently argues that the brothers' past practice of equalizing the amount of reimbursed personal expenses was altered by Sydney's agreement in January 1974 that his personal expenses would be charged against his capital account and not as expenses of the partnerships.

The district court found that prior to Sydney's move to Florida the brothers had an agreement that they would charge their personal expenses to the partnerships. The court also found that Sydney and Ashley had agreed that if one brother's personal expenses were greater than those of the other brother, a payment would be made to equalize the situation. When it ordered Ashley to pay Sydney an amount representing the personal expenses charged by Ashley after 1973, the district court referred to the equalization agreement and apparently held that it had not been altered by the brothers. We do not perceive any basis for holding otherwise. The January 1974 agreement between Sydney and Ashley clearly altered one aspect of their past practice—Sydney's personal expenses were to be charged against his capital account rather than as expenses of the partnership. However, the evidence does not reveal that the brothers even referred to the equalization practice in reaching this agreement. In addition, the decision to change the method of charging Sydney's personal expenses does not by itself indicate that the equalization agreement must have been modified. Thus, we conclude that the district court did not commit error when it awarded Sydney an amount equal to one-half of the personal expenses charged to the partnerships by Ashley.

### V.

We conclude that the district court did not err when it found that the partnerships had not been dissolved as of December 31, 1973. We also uphold the district court's finding that Ashley is not entitled to compensation beyond his share of the partner-

ship profits for managing the partnerships between August 1973 and June 1977. Finally, we find that the court did not err when it ordered Ashley to pay Sydney an amount equal to one-half of the personal expenses charged to the partnerships by Ashley between January 1974 and June 1977.

### VI.

The judgment of the district court will be affirmed.