Robinson, Appellant, *v.* Philadelphia.

Argued April 18, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Stanley M. Greenberg,* with him *Ochman & Greenberg,* for appellant.

*David Berger,* City Solicitor, with him *Yale B. Bernstein,* Assistant City Solicitor, *James L. Stern,* Deputy City Solicitor, and *Alan Miles Ruben,* Deputy

to the City Solicitor, for City of Philadelphia, appellee.

OPINION BY MR. JUSTICE BELL, May 23, 1960:

Plaintiff brought a taxpayer's suit in equity to enjoin the defendants, the City of Philadelphia, its Department of Public Health, and the Board of Trustees of Philadelphia General Hospital, from carrying out a certain contract dated April 24, 1959. This contract was made on behalf of the "City of Philadelphia" by the Board of Trustees Philadelphia General Hospital with two private institutions, the University of Pennsylvania and Temple University, and related to the operation, management and control of the Philadelphia General Hospital.

Plaintiff appealed from the Order of the Court below which sustained defendants' preliminary objections and dismissed the complaint.

In *Fawcett v. Monongahela Railway Co.*, 391 Pa. 134, 137 A. 2d 768, we quoted with approval the well settled principle reiterated in *Gardner v. Allegheny County*, 382 Pa. 88, 114 A. 2d 491, where the Court said (page 136): "Defendants by their 'preliminary objections admit as true all facts which are averred in the bill of complaint but not the pleaders' conclusions or averments of law': Narehood v. Pearson, 374 Pa. 299, 302, 96 A. 2d 895. Moreover, when the sustaining of defendants' preliminary objections will result in a denial of plaintiffs' claim, or a dismissal of plaintiffs' suit, preliminary objections should be sustained only in cases which are clear and free from doubt: London v. Kingsley, 368 Pa. 109, 81 A. 2d 870; Waldman v. Shoemaker, 367 Pa. 587, 80 A. 2d 776."

Plaintiff's complaint alleges that the above mentioned contract made by the City with the University of Pennsylvania and Temple University is illegal, im-

proper and unconstitutional. Plaintiff also alleges that the initial cost of $200,000 for 6 months, which was appropriated by City Ordinance No. 2696, was for an illegal purpose and the expenditure of this sum "may and probably will result in additional burdens to the taxpayers of Philadelphia caused by wasteful and unwarranted disbursements."

Plaintiff further alleged that the operation of the Philadelphia General Hospital has resulted in adequate care for patients so that there is no need for the proposed contract and the new operation; and that "The contract and proposed operation of the hospital is a violation of Section 5 B 3 of the Pennsylvania Fair Employment Practice Act in that same will result in discrimination of employees of the hospital because of race, color, religion or national origin."

No facts were given by plaintiff to support the averment of discrimination.

The gist of plaintiff's complaint is that the City has turned over and delegated to the University of Pennsylvania and to Temple University "almost completely without standards," the operation, direction and control of the Philadelphia General Hospital, in violation of the City Charter, Section 5-300(e) and Section 5-303, and in violation of Article III, Section 20 of the State Constitution.

Section 5-300(e) of the Philadelphia Home Rule Charter, adopted April 17, 1951, provides: "that the Department of Public Health shall have the power and its duty shall be to perform the following functions: . . . (e) City Hospitals. The Department shall have *general supervision** over all City hospitals now or hereafter owned or operated by the City. It shall determine the capacity of City hospitals and shall

---

* Italics throughout, ours.

determine and designate the type of persons and the proportion of each to be received therein. The Department shall recommend and bring to the attention of the officers and Boards of Trustees of City hospitals standards and methods of such hospitals and for the betterment of the condition of their patients."

Section 5-303 of the Charter establishes the Board of Trustees. It reads as follows: *"The Board of trustees of each City hospital shall have direction and control of its management.* Each board shall select a hospital director or superintendent who shall, subject to the authority of the board, administer the hospital in all its departments. On nomination by the director or superintendent, each such board shall from time to time appoint such assistants and employees as may be necessary."

Article III, Section 20 of the Constitution of Pennsylvania provides: *"Special Municipal Commissions prohibited.* The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

The Constitutional prohibition set forth in Section 20 extends to municipal governments as well as to the General Assembly: *Lighton v. Abington Township,* 336 Pa. 345, 9 A. 2d 609. In the *Lighton* case the Court said (page 353): "We think the township, as the governmental agent of the state, is subject to the same prohibition to which the state is subject. Counsel for defendants contend that the challenged statute 'does not delegate to a private corporation any power' but that 'it does authorize a municipality voluntarily to enter into an agreement with a private corporation, such as a bank or trust company, representing, as a

trustee, the bondholders.' As the Constitution specifically deprives the state of power to delegate the management of the municipal property to a private corporation, certainly the agent, the township, cannot make such a delegation; the effect of the limitation on the principal would be destroyed if the agent could do what was prohibited."

The Board of Trustees of PGH attempted in and by the contract in question to improve and broaden the medical and related hospital services which it has been furnishing its patients, as well as to enlarge and improve its medical staff.

Plaintiff argues that a worthy objective does not justify the contract of a City Council or any public body unless such a contract is authorized by the Constitution or by an Act of the Legislature or by a valid ordinance, or otherwise by law. With this contention, we agree: *Barth v. Philadelphia School District,* 393 Pa. 557, 561, 143 A. 2d 909.

We agree with much of the law which plaintiff relies upon, but not with its application to the facts in the instant case. The preamble to the City's agreement recites: "Whereas, the City finds it increasingly difficult to provide medical care and service to the patients at Philadelphia General Hospital on the basis heretofore maintained of a medical staff consisting largely of unpaid volunteers, with a limited number of paid medical personnel;"

The contract by its terms provides inter alia that the duty and responsibility of the Universities is to provide "all medical and related services not provided directly by PGH for the proper and efficient operation of [the division assigned to each University], including medical care and supervision *in accordance with standards established by the Board of Trustees of PGH* and under the general supervision of the Executive Di-

rector of PGH . . . [and to] provide the services of such paid or volunteer medical and other personnel as, when added to the personnel presently provided by PGH, may reasonably be required to operate [the] respective divisions [of Pennsylvania and Temple] and all common departments *in a manner satisfactory to the Board of Trustees of PGH."* (Paragraphs 4, 5, 6 of the contract) The contract further recited that the division to be operated by Pennsylvania and the division to be operated by Temple, and the departments of each and both shall be determined *by the Rules of the Board of Trustees of PGH* relating to the Medical Staff of PGH.

We do not deem it necessary to recite in greater detail the various powers, provisions, duties and limitations set forth in the contract. It will suffice to say that our study of the contract convinces us that neither the City of Philadelphia nor the Department of Public Health nor the Board of Trustees of Philadelphia General Hospital has unlawfully delegated their powers and responsibilities in and by the above mentioned contract.*

Plaintiff averred that the expenditure of $200,000 and upwards by the City "may and probably will result in . . . wasteful and unwarranted disbursements." No facts were given by plaintiff to support the averment of waste.

Public officials are presumed to have acted lawfully and in good faith until facts showing the contrary are averred, or in a proper case are averred and proved: *Parker v. Philadelphia,* 391 Pa. 242, 249-250, 137 A.

---

* The above mentioned agreement for obtaining medical services for a public hospital is not novel and similar agreements have been upheld by other Courts. See *Los Angeles County v. Ford,* 263 P. 2d (Cal.) 638; *County of San Diego v. Gibson,* 284 P. 2d (Cal.) 501 (1955).

2d 343; *Hughes v. Chaplin,* 389 Pa. 93, 132 A. 2d 200. With respect to the allegation of waste, the case is ruled adversely to the plaintiff by *Parker v. Philadelphia,* supra; *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A. 2d 331. In those cases the selection of land for the purpose of an incinerator and the selection of certain properties for a public housing project were unsuccessfully challenged. The Court in *Parker v. Philadelphia* aptly said: "It is not sufficient that appellants disagree with the wisdom of the City Council's action. A court of equity will not substitute its [discretion or its] determination of what may be wise for the decision of the appropriate governmental body, absent a showing of bad faith, [fraud, lack of power] abuse of power, etc. See Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 109 A. 2d 331, and the numerous cases cited therein at p. 572.

" '. . . By a host of authorities in our own and other jurisdictions it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action [or lack] or abuse of power. . . . the scope of [our] review is limited to the determination of whether there has been [a lack or abuse of power], a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion. . . .'

"What was stated in the Blumenschein case, supra, as to administrative agencies applies a fortiori to the actions of an elective legislative body. See particu-

larly Wentz v. Philadelphia et al., 301 Pa. 261, 151 A. 883."

In the absence of any allegation of fraud or bad faith or facts showing capricious action or abuse of power or a flagrant abuse of discretion, a Court may not substitute its judicial discretion or judgment for the administrative discretion which is vested in proper City officials. The authorities hereinabove cited dispose of plaintiff's contentions of lack of need and waste.

Plaintiff next contends that the Medical School Admissions policy of the University of Pennsylvania and of Temple University is discriminatory and the use of employees (medical students) from these schools in the implementation of the above mentioned contract is illegal and contrary to public policy, in that it violates Section 5 (b) (3) of the Pennsylvania Fair Employment Practices Act of October 27, 1955, P. L. 744, 43 PS §§951-63. That Act provides pertinently: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania: . . . (b) For any employer, employment agency or labor organization, prior to the employment or admission to membership, to . . . (3) Deny or limit through a quota system, employment or membership because of race, color, religious creed, ancestry, age, national origin or place of birth."

Appellant fails to state in his complaint any facts to support his aforesaid contention but says in his brief that the Philadelphia Fellowship Commission in 1957 published a pamphlet in which it stated that there was evidence of discrimination against Jewish, Negro and Italian students at each of the above-mentioned Universities. One answer to this allegation will suffice.

Assuming arguendo that the Universities are employers within the meaning of the Pennsylvania Fair Employment Practices Act, Paragraph 11 of the above mentioned contract clearly, specifically and unequivocally provides: "This agreement is subject to the terms of the Philadelphia Home Rule Charter and in its performance, the parties shall not discriminate nor permit discrimination because of race, color, religion or national origin."

It is clear that there is no merit in this "discrimination" contention of plaintiff.

Plaintiff argues that in spite of the language of the above-mentioned contract which is attached to and made a part of his complaint, the contract will be carried out in the future in such a manner as to transfer and delegate to the University of Pennsylvania and to Temple University authority which is vested by law in the defendants and thereby make the contract illegal and unconstitutional. We find no facts in the pleadings or in the record to justify this apprehension. Plaintiff's contention that defendants intend to evade and by their future actions to breach the terms of the above contract was not made in the Court below and therefore cannot be raised by appellant in this Court, or made a basis for equitable relief: *Rosenfeld v. Rosenfeld*, 390 Pa. 39, 133 A. 2d 829; *Sherwood v. Elgart*, 383 Pa. 110, 117 A. 2d 899. See also *Namy v. Black*, 367 Pa. 523, 80 A. 2d 744. Even if this contention could now be considered, equity will employ the strong arm of injunctive relief to restrain anticipated injury only when plaintiff's right thereto is clear, and irreparable harm is reasonably certain to result if the relief is not granted: cf. *Curll v. Dairymen's C. S. Association*, 389 Pa. 216, 132 A. 2d 271; *Erie v. Gulf Oil Corporation*, 395 Pa. 383, 150 A. 2d 351; *Kelly v. Philadelphia*, 382 Pa. 459, 115 A. 2d 238; *McDonald v. Noga*, 393 Pa. 309, 141 A. 2d 842.

Moreover, if plaintiff's apprehension of future illegal actions by one or more of the defendants, or of future unlawful use or abuse of power materializes, plaintiff can at that time bring an equitable action seeking equitable relief.

We find no merit in any of plaintiff's contentions.

Order affirmed; costs to be paid by appellant.