Clark, Appellant, *v.* Rutecki.

Argued May 24, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

reargument refused July 12, 1962.

*John F. McElvenny,* with him *Norman Shigon,* for appellant.

*James J. McEldrew,* with him *Elston C. Cole,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 28, 1962:

A jury in a trespass action in the Court of Common Pleas No. 2 of Philadelphia County on May 9, 1960 returned a verdict in favor of Walter Rutecki, defendant, and against Andrew Clark, plaintiff. On May 11, 1960, Clark's counsel filed a motion for a new trial averring that the verdict was (a) against the law, (b) against the evidence, (c) against the law and evidence, (d) against the weight of the law, (e) against the weight of the evidence and (f) against the weight of the law and evidence. At the same time Clark's counsel reserved the right to file additional reasons for a new trial after the transcription of the notes of evidence.[1]

For a period of approximately sixteen months Clark's counsel did nothing about the motion for a new trial, neither filing additional reasons for a new trial nor ordering the motion on the argument list. Finally, on September 29, 1961, Rutecki's counsel filed a motion to dismiss the motion for a new trial for lack of prosecution and to that motion an answer was filed. The motion to dismiss came up for hearing before

---

[1] Forty days after the new trial motion was filed—June 20, 1960—the transcribed notes of evidence were filed.

Judge VINCENT CARROLL on October 31, 1961 and at that time Clark's counsel filed no brief nor did he appear at the hearing. On that date Judge CARROLL dismissed the motion for a new trial for lack of prosecution.[2]

Almost ten weeks later Clark's counsel entered a judgment on the verdict in favor of Rutecki and against Clark.[3] About ten days later Clark's counsel took an appeal from that judgment.[4]

On this appeal Clark seeks to raise three questions: (1) that the court below erred in permitting the introduction into evidence of certain Unemployment Compensation and Workmen's Compensation payments to Clark; (2) that the court below erred in referring to an Act of God in its charge to the jury; (3) that the court below was prejudiced against Clark. The motion for a new trial made no reference whatsoever to these questions nor were they raised in or presented for the consideration of the court below.

Time and again we have stated that questions which are not raised in the court below will not be considered on appeal: *Bechler v. Oliva,* 400 Pa. 299, 303, 161 A. 2d 156; *Robinson v. Philadelphia,* 400 Pa. 80, 89, 161 A. 2d 1; *Rosenfeld v. Rosenfeld,* 390 Pa. 39, 133 A. 2d 829; *Sherwood v. Elgart,* 383 Pa. 110, 117 A. 2d 899.

---

[2] Apparently Clark's counsel did contact Rutecki's counsel asking that the motion to dismiss be withdrawn. According to Rutecki's counsel, he agreed that if Clark's counsel would file a petition to reinstate the motion for a new trial he would not oppose such a petition. No such petition was filed and Rutecki's counsel heard nothing further until he was served some months later with a notice of this appeal.

[3] Rutecki's counsel knew nothing of this until after the appeal was taken.

[4] In violation of Rule 63 of this Court, Clark's counsel failed to notify the court below of the appeal and did not serve a statement of the matters to be complained of on appeal.

Since the *only* questions sought to be argued on this appeal were not raised in the court below we have no alternative than to affirm the judgment in the court below.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The errors alleged in this appeal are so basic and fundamental that I would grant a new trial, despite the apparent sloth and indifference of plaintiff's counsel. I have always maintained that it is unfair to penalize a litigant because of the fault of the lawyer, provided the rights of third persons have not intervened.

The plaintiff in this case has not received the kind of a trial to which he is entitled under the laws of the Commonwealth, plus the code of fairness which should exist in every tribunal worthy of the name.

On August 10, 1955, Andrew J. Clark, the plaintiff, was riding in the body of a truck being operated by the defendant Wallace Rutecki. As they rode, a slight drizzle came on. It developed into a steady drizzle and then became that kind of a rain which coats the roadway with elusiveness and treachery, the kind of a rain which can turn a pavement into a skating rink. The plaintiff warned the defendant that he should slacken the speed of the car, which was moving at about 35 miles per hour. The defendant ignored the warning. Suddenly the car became a huge sled, spinning in its own orbit, sliding off the highway and crashing into the embankment, inflicting serious injuries to the plaintiff.

He brought suit against Rutecki. The trial began on May 2, 1960 and ended on May 9, 1960. The trial judge explained the reason for the duration of the trial: "This case was tried by a jury beginning the morn-

ing of May 2, 1960, and continuing until May 9, 1960, at 3:55 P.M. There was an intervening weekend and the Judicial Conference on May 5 and 6 during which days no session was held so in all it required five full days . . . from approximately 10 a.m. until 4 p.m. with the exception of one day when there was an interruption of about one hour in order for the Court to dispose of deferred criminal cases."

One could overlook the enormous amount of precious time devoured for so simple a trial, if one could feel that justice had been done or at least that there was the appearance of justice having been done, even if one did not agree with the verdict of the jury. I am not satisfied that either of these hypotheses had fulfillment.

One thing that litigants are entitled to in a jury trial is an enlightening and impartial charge from the judge. I quote from the record. The judge said: "I say to you the mere fact that an accident happened does not mean that anybody is liable. It does not necessarily mean that the defendant is liable, or the plaintiff is liable. The mere fact of the happening of an accident does not presuppose liability on anybody's part. Do not start out and say that there was an accident so somebody is to blame."

The judge makes it quite clear that he does not think that the plaintiff has much of a case, because one must ignore the second part of the second sentence since obviously the plaintiff could not be liable, being, as he was, a passive passenger in the vehicle.

After these four hammer blows in behalf of the defendant, the judge makes a concession. He says that it is possible *someone* is to blame, but he does not allow that thought to sink too deeply because he immediately follows it with the modifying phrase that maybe *no one* is to blame. The fifth sentence reads: "It may be, or it may not be."

30

The judge has now fully established in the minds of the jury that they must not believe that merely because there is an accident the defendant is to blame. He has hammered that concept into their consciousness as a blacksmith strikes at the anvil with repetitive blows until the metal is thoroughly malleable. He has told them four and a half times that the plaintiff probably does not have a case. He has not been completely unfair in this because he has left a one-half chance that someone else, not the defendant necessarily, is to blame. It could be someone on a motorcycle, it could be Providence, it could be Jehovah.

With his blacksmith hammer raising sparks, he now answers the question which the jury would like to have answered, namely, who or what caused the accident? The judge strikes: "It may be that the fellow who came down the road with the motorcycle is to blame for this. Maybe it was the fellow who was skidding ahead of this truck who is to blame for this. Maybe it was an Act of God perhaps because of the crowned road—it was a side road going into Frankford Avenue—maybe it was because of the construction of the road—lots of things are the result of an Act of God, that humans are not responsible for—mechanical failure, for instance."

If the judge tells the jury that the Supreme Being is responsible for a mechanical failure, although there is nothing in the case about a mechanical failure, may the jury not believe that the black-robed figure sitting high above them has ways of ascertaining phenomena which are not available to them with their finite minds, their limited knowledge and vision?

And if the judge tells the jury that the Supreme Being was responsible for the crowned road—on account of "a side road going into Frankford Avenue—", how are the jury to think otherwise? There was no evidence in the case about any mechanical failure or

about the manner in which the crown was added to the road, but if the judge says that these things are in the case, certainly the jury cannot contradict the judge.

Not only did the judge suggest that it was an "act of God" which caused a mechanical failure (even though there was no mechanical failure), and it was an "act of God" that may have been responsible for the crowned road, (even though there was no explanation as to how this had anything to do with the accident), but he told the jury that there could be other things of a celestial character in the case. He put it that "lots of things are the result of an Act of God that humans are not responsible for." What were those "lots of things"? Again the jury had to take for granted that the judge knew, but, perhaps for reasons of state felt that these "lots of things" should not be divulged to them.

If these "lots of things" caused the accident, obviously the defendant was not responsible, and the jury was perfectly justified in bringing a verdict for the defendant. But if the verdict was the result of "lots of things", of which one of them was a charge which reads more like a cavalry charge than a charge in court, I believe the plaintiff is entitled to a new trial.