Teodori *v.* Penn Hills School District Authority, Appellant.

128

Argued March 28, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*C. Francis Fisher,* with him *R. Rhody Brenlove,* and
*Brenlove & Fisher,* for appellant.

*Thomas R. Eddy,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 7, 1964:
Plaintiff-appellee (Teodori), on April 10, 1958, en-
tered into a written contract with defendant-appellant
(Authority) for certain excavation work to be done on
a site to be used as an athletic field. The contract was

let to Teodori after competitive bidding, for a total price of $134,485.

The contract provided that *changes* and *alterations* should be ordered in writing by the owner. It also provided, however, as follows: *"Conditions Differing From Those Shown On Plans Or Indicated In Specifications.* Should the Contractor encounter subsurfaces and/or latent conditions at the site materially differing from those shown on the Plans or indicated in the Specifications, he shall immediately give notice to the Architect of such conditions, before they are disturbed. The Architect shall thereupon promptly investigate the conditions and if he finds that they materially differ from those shown on the plans or indicated in the Specifications, he shall at once, make such changes in the Plans and/or Specifications as he may find necessary. Any increase or decrease or cost resulting from such changes shall be adjusted in the manner provided herein for adjustments as 'Extra Work'."

The method of computing payment for extra work is set forth in the contract in the following language: "By such applicable unit prices, if any, as are set forth in the Contract; or If no such unit prices are so set forth, then by a lump sum mutually agreed upon by the Owner and the Contractor; or If no such unit prices are so set forth, and if the parties cannot agree upon a lump sum then by the actual net cost in money to the Contractor of the materials and of the wages of applied labor (including premiums for Workmen's Compensation Insurance, Social Security and Unemployment Compensation) required by law, plus such rental for plant and equipment (other than small tools) required and approved for such Changes and Alterations, plus fifteen per cent (15%) as compensation for all other items of profit; . . . ."

A further pertinent provision of the contract provides: *"All Work Subject To Control of Architect.* In

the performance of the work, the Contractor shall abide by all orders, directions, and requirements of the Architect and shall perform all work to the satisfaction of the Architect, and at such time and places, by such methods and in such manner and sequence as he may require. . . . Upon request, the Architect shall confirm in writing any oral order, direction, requirement or determination."

Teodori commenced work under the contract and was to have completed the job by June 14, 1958. He soon struck a snag, however, which culminated in this litigation. What occurred is well summarized in the opinion of the court below:

"A few days after the preliminary work had begun, plaintiff was advised by a representative of the Sun Pipe Line Company that one of the company's six-inch high pressure gasoline transmission lines ran beneath the surface of the property at a depth of about three feet in the area in which the excavating and grading work was to be performed. The contract documents did not disclose the existence of this line nor did the plaintiff have actual knowledge of its existence.

"When the existence of the gasoline line was discovered, Mr. Pyle, architect for the defendant, called a meeting at which plaintiff and the defendant's job inspector, Mr. Murray, and a representative of Sun Pipe Line Company were present. At this meeting, Mr. Pyle instructed the plaintiff to change his plan of operations in such manner and method as to avoid working in the area in which the gasoline line was located and to continue to so operate until the gasoline line was relocated.

"The pipeline relocation was completed on July 2, 1958, and it was only then that plaintiff was able to resume some semblance of normality in his earth moving work. The plaintiff claims damages in the sum of $98,613.95 over and above the original contract price.

This amount is based on the increased cost of the work brought about by the existence of the high pressure gasoline line, the resultant delay in its relocation, and the consequential changes in the plaintiff's plan of operation for the removal of earth, all of which conditions combined to delay plaintiff's completion of the work from June 14, 1958, the original date of completion, to September 15, 1958."

The matter was tried nonjury and the trial court found in favor of Teodori and entered a judgment in his favor in the amount of $55,000. Authority filed exceptions, which were heard and dismissed by the court en banc; this appeal followed.

Authority raises four questions on appeal, three of which were raised before and considered by the trial court and the court en banc. Two of the issues are factual, Authority arguing that the evidence does not support a finding that a "latent condition" existed on the job site, and that, under the evidence, the verdict is excessive. In *Penneys v. Pennsylvania Railroad Company,* 408 Pa. 276, 183 A. 2d 544 (1962), we said: "It is axiomatic in the law of this Commonwealth that the findings of fact of a trial judge, sitting without a jury, sustained by the court en banc, have the force and effect of a jury's verdict, and, if based on sufficient evidence, will not be disturbed on appeal. [citing cases]."

Without going into a detailed review of the evidence in this opinion, we find in the record ample evidence to support the finding of "latent condition" and the amount of the verdict.

Authority next argues that the contract between the parties provided no agreement to pay for extra work in the amount claimed by Teodori. This contention is based upon the "Changes and Alterations" section of the contract, which clearly provides that such "changes and alterations" be made by written order.

This argument completely ignores the section of the contract dealing with "Conditions Differing From Those Shown On Plans Or Indicated In Specifications", set forth in full above. The parties obviously contemplated the possibility of the exact type of contingency which arose, and provided for it in the contract.

We agree with the conclusion of the court below, that Teodori's right to extra compensation, if any, is governed by the "differing conditions" clause, and not by the "changes and alterations" clause, the extra compensation not being sought for "changes" and/or "alterations" as those terms were used in the contract.

Nor are we moved by Authority's argument that the award of extra compensation is contrary to the provisions of the School Code or Municipality Authorities Act. The statutory authority for Authority to award contracts is contained in the Municipality Authorities Act of 1945, as amended by the Act of May 6, 1957, P. L. 112, §1, 53 P.S. §312. That act provides, in substance, that contracts for construction and repair work involving a cost in excess of $1,000, shall be awarded only on the basis of competitive bids.

The contract in the instant case was entered into under circumstances which fully complied with the above statute. The extra work which the plaintiff was required to do and upon which his claim is based was a natural extension of the quantum of the work contemplated by the original contract and was clearly covered by an express provision thereof. No work not encompassed in the original contract was presented by discovery of the gasoline line, and thus no physical changes or alterations in the contract documents were necessitated thereby. The end product of the site preparation remained exactly as originally planned; only the manner of accomplishing it was affected. The contract unequivocally provided for this contingency,

and the plaintiff had a clear contractual right to adjust his method of operation and to recover his additional costs within the contract framework.

Here, the contract foresaw the possibility of what actually occurred, and Teodori complied with the governing provisions of the contract. The architect investigated the conditions, found them materially different from those shown or indicated in the plans and specifications and made the necessary changes for the conduct of the work, thereby entitling Teodori to an increase in compensation in accordance with the "Extra Work" section of the contract.

In every instance where we have denied extra compensation on public or quasi-public contracts, we have done so because the extra work was either not contemplated by the original contract, or the extra work was not done in strict compliance with the terms of the contract. Cf.: *Lehigh Coal & Navigation Co. v. Summit Hill School District*, 289 Pa. 75, 137 A. 140 (1927); *Morgan v. Johnstown*, 306 Pa. 456, 160 A. 696 (1931); *Yoder v. Luzerne Township School District*, 399 Pa. 425, 160 A. 2d 419 (1960); *Scott Township School District v. Branna Construction Corp.*, 409 Pa. 136, 185 A. 2d 320 (1962). Neither of these defects appears in the case at bar, to preclude a recovery by Teodori.

Finally, Authority contends that Teodori was precluded from bringing the instant action by virtue of a clause in the contract requiring arbitration. It states that an arbitration was had and resulted in an award to Teodori much smaller than that made by the court below. Authority argues that the jurisdiction of the court below is limited to a review of the award of the arbitrators as provided by the Arbitration Act of April 25, 1927, P. L. 381, 5 P.S. §161 et seq. None of the facts supporting this argument appeared in the record below and the issue was first raised in this appeal.

We have no way of knowing why the provisions of the Arbitration Act were not followed by the parties, whether by agreement or otherwise. We only know that Teodori brought an action of assumpsit, which Authority permitted to go to trial. Rule 1030 of the Pennsylvania Rules of Civil Procedure provides that the defense, inter alia, of arbitration and award shall be pleaded as new matter in a responsive pleading, and Rule 1032 provides that failure to do so constitutes a waiver of the defense, except in cases therein enumerated, not applicable here. The pleadings are devoid of any mention of the defense of arbitration and it is therefore waived. The defense does not, as contended by Authority, go to the jurisdiction of the court over the subject matter of the litigation. Further, we will not consider on appeal, matters not raised below. *Kilian v. Allegheny County Distributors*, 409 Pa. 344, 185 A. 2d 517 (1962) ; *Clark v. Rutecki*, 408 Pa. 25, 182 A. 2d 687 (1962) ; *Greet v. Arned Corp.*, 412 Pa. 292, 194 A. 2d 343 (1963).

Judgment affirmed.

Mr. Justice JONES and Mr. Justice ROBERTS dissent.