Daly *v.* Buterbaugh (et al., Appellant).

524

Argued March 19, 1964.

reargument refused March 23, 1965.

*John G. Gent,* with him *Curtze, Gent & McCullough,* for appellant.

*John M. Wolford,* with him *Isaac J. Silin,* and *Dunn & Wolford,* and *Silin, Eckert & Burke,* for appellees.

OPINION BY MR. JUSTICE JONES, October 7, 1964:

On December 31, 1960, at approximately 11:20 p.m., Nancy Daly was a passenger in a motor vehicle owned and then being operated by her husband, Donald Daly (Daly), in a northerly direction on Liberty Street, Erie, a *through* street. Liberty Street is intersected by Eleventh Street, a *one way* street for vehicular traffic proceeding in an easterly direction, and, at that intersection, a stop sign is located which requires Eleventh Street vehicular traffic to stop before entering Liberty Street. As Daly's motor vehicle entered this intersection, it was struck by a motor vehicle, owned and then operated by Edward Buterbaugh (Buterbaugh), which had been traveling in an easterly direction on Eleventh Street. As a result of this collision, both Nancy Daly and Daly sustained personal injuries.

To recover their several damages sustained in this accident, Nancy Daly and Daly instituted joint trespass actions in the Court of Common Pleas of Erie County against Buterbaugh and Buterbaugh then secured a severance of the actions and joined Daly as an additional defendant in the Nancy Daly-Buterbaugh action.[1] After issue joined, the matter came on for trial before a court and jury and the jury returned the following verdict: "We . . . do find for the Plaintiff [Nancy Daly] and recommend compensation for pain

---

[1] At the time of accident, Sue Campion and Dale Campion, her husband, were passengers in Daly's motor vehicle and Dale Campion was killed. Neither Campions' actions against Daly nor Daly's action against Buterbaugh are involved in this appeal. In Nancy Daly's action against Buterbaugh wherein Daly became an additional defendant there were other original and additional defendants but such fact is of no moment on this appeal.

for the amount of $16,000.00 and compensation for permanent changes for an amount of $30,000.00."[2] Daly moved for both a new trial and judgment n.o.v.; Buterbaugh filed no post-trial motions and a judgment on the verdict in favor of Nancy Daly against Buterbaugh was entered.[3] During the pendency of Daly's post-trial motions, upon the petition of the Keystone Insurance Company (Buterbaugh's insurance carrier), the court directed, inter alia, that Keystone should pay to Nancy Daly $7,902 and, by such payment, be exonerated and discharged from its policy obligation for payment of Nancy Daly's judgment against Buterbaugh but that court order expressly provided that such payment would not "constitute an exoneration or discharge of the personal obligation of [Buterbaugh] arising out of the [Nancy Daly] judgment" and said judgment was not by such payment satisfied. Sometime thereafter, Daly's post-trial motions were dismissed and the prothonotary directed to enter judgment on the verdict. The judgment *as entered* on August 28, 1963, reads: ". . . judgment in favor of Nancy Daly against Donald Daly, additional defendant, in the amount of the verdict $46,000.00 plus int. from date thereof October 18, 1962. . . ." From that judgment this appeal is taken.

Three questions are raised upon this appeal:[4] (1) whether the entry of judgment in this trespass action in favor of the wife, Nancy Daly, against her husband, Daly, was valid? (2) whether the court below erred "in directing judgment in favor of [Buterbaugh] original defendant, against [Daly], the additional defendant husband when [Buterbaugh] had paid less than his

---

[2] The parties and the court below treat this verdict as against *both* Buterbaugh and Daly. We shall treat it as such.

[3] This judgment is not involved in this appeal.

[4] Two other questions raised in Daly's brief,—which attacked the charge of the court,—were abandoned at oral argument.

pro rata share of the verdict and judgment entered against him and no claim for relief for contribution was requested by [Buterbaugh]?"[5] (3) whether a new trial should be granted because of certain allegedly improper remarks by Nancy Daly's counsel in his jury summation?

At the outset, Nancy Daly's counsel contends that the first question, i.e., that question which attacks the validity of the Nancy Daly-Daly judgment, is improperly before this Court because it was not raised in the court below. It is clear that questions which could have been but were not raised in the court below need not be considered on appeal: *Clark v. Rutecki,* 408 Pa. 25, 182 A. 2d 687. To this contention Daly's counsel answers that it was not until disposition of the post-trial motions and the entry of the judgment under direction of the court below that the invalidity of this judgment appeared. In other words, Daly's counsel assumed—with some justification—that the judgment directed to be entered would be in favor of Nancy Daly against Buterbaugh, original defendant, and Daly, additional defendant, and not in favor of Nancy Daly against Daly, additional defendant. We believe that Daly's counsel's position has merit. The attack on the validity of the judgment as entered could not have been raised at any other stage of the proceeding and the error complained of may be considered "basic and fundamental" within the rationale of *McDonald v. Ferrebee,* 366 Pa. 543, 547, 79 A. 2d 232, and *Giannone v. Reale,* 333 Pa. 21, 24, 3 A. 2d 331.

Daly first attacks the validity of the judgment entered against him in favor of Nancy Daly and the thrust of this attack is that the entry of such judgment accomplishes a result proscribed by the law in this Commonwealth, i.e., that it grants a wife the right

---

[5] As set forth in Daly's brief.

*during coverture,* to recover damages for personal injuries from her husband for a tort committed by him during coverture. Our inquiry into the validity of Daly's position must be initiated by an examination of the pleadings of Nancy Daly and Buterbaugh. There is no averment in the complaint of Nancy Daly that Daly had been negligent nor that Daly was in anywise liable to her for damages; therefore, the effect of this judgment is to award to her damages for which she made no claim and for negligence which she did not aver. Buterbaugh's complaint averred that Daly was negligent and, by reason thereof, he became *solely liable* to Nancy Daly[6] or, in the alternative, "was *jointly and severally* liable with the original defendant, [Buterbaugh], . . ."

With the exception of one decision hereinafter noted, our case law has consistently held that a wife during coverture cannot maintain a trespass action against her husband to recover damages for personal injuries caused by the husband: *Meisel v. Little,* 407 Pa. 546, 548, 549, 180 A. 2d 772; *Johnson v. Peoples First National Bank & Trust Co.,* 394 Pa. 116, 118, 119, 145 A. 2d 716 and cases therein cited. The basis for this rule is set forth in *Koontz v. Messer,* 320 Pa. 487, 493, 181 A. 792: ". . . the personal immunity which protects [the husband] is based simply upon the policy of preserving domestic peace and felicity."

In *Koontz v. Messer,* supra, a wife instituted a trespass action against the employers of her husband for injuries alleged to have been sustained by her through the negligence of her husband while in the course of

---

[6] Not only did Nancy Daly not claim that Daly was liable, but, under the state of the law in this Commonwealth, had Buterbaugh averred *only* sole liability on the part of Daly for the happening of this accident Daly could not have been properly joined as an additional defendant. See: *Shaull v. A. S. Beck New York Shoe Co.,* 369 Pa. 112, 115, 116, 85 A. 2d 698.

his employment; upon the theory that the husband-employee was liable over to his employers, the husband was brought upon the record as an additional defendant; the jury returned a verdict in favor of the wife against the employers and in favor of the employers against the husband-employee. We held that the wife, on the theory of *respondeat superior*, could sue the employers of her husband even though she could not sue her husband and that the personal immunity of the husband from suit by his wife did not prevent him, as an additional defendant, from being liable to answer, by way of contribution, to the third parties sued by the wife. *Koontz* is presently pertinent in two respects: (a) the joinder of the husband as an additional defendant, *potentially* liable by way of contribution to the third party-original defendant, is proper even where the suit against the third party-original defendant is by the wife; (b) even though the husband be joined as an additional defendant, such joinder does not enlarge the right of the wife to recover damages because, as this Court said: "Plaintiff [the wife] has had and could have no recovery against her husband, although the latter is joined as additional defendant". (p. 494).

*Fisher v. Diehl,* 156 Pa. Superior Ct. 476, 40 A. 2d 912, presented a situation almost identical to the instant situation. In *Fisher,* a wife and husband instituted a trespass action against a third party to recover damages resulting from a collision between the husband's motor vehicle, then operated by him, and a truck owned by the third party and then operated by the third party's employee. The third party requested a severance of the actions and a joinder of the husband as an additional defendant, the latter on the theory that the husband was solely or, in the alternative, jointly liable for the accident. The court below granted both the requested severance of the actions and

the joinder of the husband as an additional defendant.[7] At trial, the jury returned a verdict against *both* the third party and the husband. On appeal, the sole question at issue was the propriety of the joinder of the husband as an additional defendant. In ruling that such joinder was proper, the late President Judge KELLER stated: "The action of the court below was not equivalent to permitting an action by the wife against her husband. Her husband is not a party defendant to the action as far as she is concerned. The judgment against him, as restricted by the Court,[8] is not enforceable by her, nor does it enure to her benefit. It is simply a judgment enuring to the benefit of the original defendant if he pays or is required to pay the wife's judgment; and it then requires the husband to pay to the original defendant only one-half of the damages paid by the latter as a result of the joint negligence of both." (pp. 483, 484). The Court held the joinder of the husband as additional defendant was proper and the judgment against both the third party and the husband should be affirmed subject, however, to the provision that "no execution be issued by the plaintiff [the wife] on the judgment entered against the additional defendant [the husband], 'so that the wife may recover only from the original defendant, [the third party], and that the [third party], original defendant, may obtain only contribution from [the husband]'." (p. 487). By the application of *Fisher* to the case at bar, Nancy Daly could recover *only* on her judgment against Buterbaugh and Buterbaugh could

---

[7] In so doing, the court below stated that it was its duty "to see that the rights of the parties are preserved and to control any execution that might be issued on any judgments rendered, so that [the wife] may recover only from the original defendant, [the third party], and that the [third party] may obtain only contribution from [the husband]." (p. 480).

[8] See footnote 7.

recover only by way of contribution against Daly but, in no event, could Nancy Daly recover on the judgment against Daly.

In *Kiser v. Schlosser,* 389 Pa. 131, 132 A. 2d 344, a wife instituted an action to recover damages for personal injuries against a third party, who in turn joined the husband as an additional defendant; the jury, inter alia, returned a verdict in favor of the wife against her husband alone. We said (p. 133) : "The court *en banc* recognized that although [the husband] was properly joined as a defendant for purposes of contribution in the action by his wife against [the third party], he [the husband] could not be directly liable to his wife. The court concluded, nevertheless, that the error was not prejudicial to the [husband and wife], and could be corrected by striking the verdict in favor of [the wife] against her husband from the record. We agree with this disposition of the issue. [citing *Koontz* and *Fisher*]."

In *Meisel v. Little,* 407 Pa. 546, supra, Janet Meisel, then unmarried, was a passenger in a motor vehicle operated by Wayne Little when Little's vehicle was involved in an accident with another vehicle operated by a third party. Ten months later Janet Meisel married Little and, sometime thereafter, she sued Little as an original defendant alleging that his negligence was the cause of the accident. Little moved for judgment on the pleadings which judgment the court granted. On appeal, this Court stated the issue: may a wife maintain an action against her husband for personal injuries caused by a tort committed by the husband prior to the marriage? In affirming the judgment entered by the court below, we held that the rule that a wife could not maintain an action for personal injuries against her husband for a tort caused by the latter was both "statutory and decisional" and that such rule "has been always strictly adhered to in this Common-

wealth". While the actual decisional point in *Meisel* is that a direct trespass action for personal injuries is not maintainable by a wife against her husband during coverture even though the husband's tort preceded the marriage, its language in proscribing a trespass action by a wife vis-a-vis her husband is much broader.

In *Ondovchik v. Ondovchik*, 411 Pa. 643, 192 A. 2d 389, Carol Dallas, then unmarried, was a passenger in a motor vehicle operated by Albert Ondovchik when it was involved in an accident with two other motor vehicles. Carol Dallas sued the operators of the other two motor vehicles and Ondovchik was brought upon the record as an additional defendant. Sometime thereafter, Carol Dallas married Ondovchik. When the case was tried the jury returned a verdict against Ondovchik alone. The court below set aside the verdict "because the plaintiff and additional defendant were husband and wife". (p. 645). This Court, in reversing the judgment n.o.v. entered in the court below, distinguished *Meisel* in the following manner: (a) in *Meisel,* suit was begun *after* the marriage and *during coverture,* whereas in *Ondovchik* suit was begun *prior* to the marriage; (b) in *Meisel,* suit was instituted directly against the husband as an original defendant whereas in *Ondovchik* the suit was entered against third parties who brought Ondovchik upon the record as an additional defendant; (c) in *Ondovchik,* the wife did not testify against the husband or vice versa, whereas in *Meisel,* had the suit proceeded to trial, the wife would have been required to testify against the husband and vice versa. The real nub of *Ondovchik* is to be found in the language of the Court: "It was the *verdict of the jury* which imposed liability upon the additional defendant [the husband]" (p. 646). (Emphasis supplied) The rationale of *Ondovchik* was that the *verdict* was "not the equivalent of a *suit* or *action*" by the wife against the husband so as to bar com-

mencement of the suit itself, that no *suit* had been commenced by the wife against the husband within the meaning of the Act of June 8, 1893, P. L. 344, §3, as amended, 48 P.S. §111, and that neither our case law nor statutes prohibited or proscribed a *verdict,* as distinguished from a *suit,* by a wife against a husband. Simplified, *Ondovchik* holds that, while a wife under the circumstances cannot *sue* her husband, she can *recover* damages from him.

*Ondovchik* presents real difficulties to an understanding of this Court's view on this important problem, a problem which the bench and bar, relying on the statutes and prior case law, with justification, have assumed to be settled. Until *Ondovchik,* it was the law of this Commonwealth that (a) a wife could not directly institute a suit against a husband and (b) that while a husband could be joined as an additional defendant in a suit instituted by the wife against a third party or parties, the wife could recover *only* against the third party or parties but not against the husband, although the third party or parties could recover against the husband by way of contribution. An examination of *Koontz, Fisher* and *Kiser* clearly indicates that both our Court and the Superior Court have recognized that the law precludes any *recovery* in tort by a wife against a husband under the circumstances. To repeat that which we said in *Koontz*: *"Plaintiff [the wife] has had and could have no recovery against her husband, although the latter is joined as additional defendant".* (p. 494). (Emphasis supplied). In *Ondovchik,* a wife was permitted to *recover* against her husband and, even though *Koontz* and *Fisher* were cited in *Ondovchik,* this Court failed to recognize that *Ondovchik* repudiated the rationale of *Koontz, Fisher* and *Kiser.*

On this important question our Court must take a consistent position so that the bench and the bar may

know our views with certainty, a certainty now lacking because of *Ondovchik* and its implications. To that end, a re-examination of *Ondovchik* must be made.

In *Meisel,* we stated (p. 548) : "At common law *neither* a husband nor wife could sue the other for injuries due to torts committed before or during their marriage. This was based upon the legal premise that a husband and wife are one person, one entity. See, Prosser on Torts, 2d Ed. 670 (1955). This rule, now based upon social reasons and public policy, is still followed in a great majority of jurisdictions in the United States. [citing authorities]. The same rule has been always strictly adhered to in this Commonwealth. However, here in Pennsylvania, *it is both statutory and decisional.* The Act of June 8, 1893, P. L. 344, §3, as amended by the Act of March 27, 1913, P. L. 14, §1, 48 P.S. §111, specifically prohibits such an action. . . . Moreover, this Court has said repeatedly over a long period of years that the common law prohibition of litigation between spouses has not been abrogated by the Acts of 1893 or 1913, supra. [citing cases]. It is argued that the rule is based upon an antiquated fiction which has been dissipated by the passage of the Married Women's Acts beginning in 1848. This overlooks the fact that the legislature in clear specific language has said as late as the year 1913, that neither a husband nor a wife may sue the other during coverture upon such a cause of action." It is crystal clear that under the law in this Commonwealth, until *Ondovchik,* such an action for personal injuries could not be maintained during coverture.

The distinctions between *Meisel* and *Ondovchik* are not of such nature as to justify the application of two different rules. First, whether the husband's tort occurred *prior to* or *during* coverture should be of no moment; the impact on the family relationship is the same and the public policy which denies the right to

maintain an action for a tort occurring during coverture applies equally to the denial of the right to maintain an action for a tort occurring *prior to* marriage. Second, recognition of the right of joinder as an additional defendant in an action by a wife against a third party is only for the purpose of protecting the right to contribution of the third party against the husband and does not create any right in the wife as against her husband. Third, it is the impact of litigation upon the relationship of a wife and husband which our case law and public policy proscribe, not simply the fact that a wife may have to testify against a husband and vice versa. Lastly, the distinction drawn in *Ondovchik* between the *verdict*—the so-called "end result" of the litigation—and the *suit*—the inception of the litigation—is a distinction without a difference. Our case law and public policy have forbidden tort litigation for personal injuries between a husband and wife because of the potential danger to the marriage relationship inherent in such litigation; whether the litigation is *instituted* by the one spouse against the other or whether litigation results in a *recovery* by one against the other should be of no moment because the injurious impact upon the marriage relationship is present in both instances. The actual result reached in *Ondovchik* is at complete variance with the results reached in *Koontz, Fisher* and *Kiser;* either *Koontz, Fisher* and *Kiser* should be overruled or *Ondovchik,* even though so recently determined, must be rejected. *Ondovchik* cannot co-exist with *Koontz, Fisher* and *Kiser.*

Our examination of the case law in this Commonwealth and the legislative intent so manifest in our statutes leads us to the conclusion that *Ondovchik* should be rejected and its doctrine no longer followed and that which this Court and the Superior Court said in *Koontz, Fisher* and *Kiser,* respectively, should

be the law,—at least until such time as the legislature determines otherwise.

With the rejection of *Ondovchik,*—the only possible prop upon which the judgment entered in the lower court can be supported—, the judgment entered in favor of Nancy Daly against Daly must be reversed.

With the rejection of the judgment insofar as Nancy Daly is concerned, we still have before us the attack upon the validity of the judgment entered against Daly insofar as Buterbaugh's rights are concerned. In considering this phase of the litigation it must be kept in mind that, in joining Daly, Buterbaugh claimed only that Daly was *solely* or *jointly* liable and made no claim as to *liability over* or *contribution.* In view of our determination that Daly, the husband, can not be *solely* liable to Nancy Daly, the joinder of Daly as additional defendant could not have been sustained on that ground alone: *Shaull v. A. S. Beck New York Shoe Co., Inc.,* 369 Pa. 112, 116, 85 A. 2d 698. Buterbaugh's joinder of Daly could only have been sustained on the ground that Daly was liable over to, or jointly liable with, Buterbaugh so that Buterbaugh could establish his right to contribution on the part of Daly. Our examination of the complaint of Buterbaugh whereby Daly was joined as an additional defendant reveals that it is sufficient to establish Buterbaugh's right to contribution if Daly's *joint* liability with Buterbaugh was established, as it has been by this jury: *Goldman v. Mitchell-Fletcher Co.,* 292 Pa. 354, 141 A. 231; Uniform Contribution Among Tortfeasors Act, §2(1) (Act of July 19, 1951, P. L. 1130, §2(1), 12 P.S. §2083).

The Uniform Contribution Among Tortfeasors Act, §2(2), provides, after its recognition in §2(1) of the right of contribution among joint tortfeasors, that a "joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged

the common liability or has paid more than his pro rata share thereof;". In the case at bar, clearly Buterbaugh has neither discharged the common liability nor paid more than his pro rata share of the liability, i.e., one-half of the $46,000 verdict plus interest. Bearing in mind that "equity [is] the keynote of the doctrine of contribution" (*Mong v. Hershberger*, 200 Pa. Superior Ct. 68, 186 A. 2d 427), the provisions of §2(2) require that, until Buterbaugh, as a joint tortfeasor, has satisfied the alternative provisions of the act he is not entitled to any contribution from Daly.

The difficulty, however, in Daly's position in attacking this judgment is that the record does not disclose that Buterbaugh in any manner whatsoever has sought from Daly a "money judgment for contribution" nor that Buterbaugh intends to seek such money judgment until he complies with the statute, supra. Under the circumstances, Daly's attack is premature. *If* Buterbaugh seeks a money judgment against Daly for contribution and *if* at that time Buterbaugh has not complied with the terms of the statute, Daly can then attack such action but that time has not arrived.

In view of the conclusion reached, we deem unnecessary consideration of Daly's other contention.

Judgment entered in favor of Nancy Daly against Daly reversed.

Mr. Chief Justice BELL concurs in the result.

Mr. Justice EAGEN would remand the record to the court below with directions to dispose of the pending motion to strike.

---

DISSENTING OPINION BY Mr. Justice ROBERTS:

I am unable to agree with the "majority" [1] that "the attack on the validity of the judgment as entered

---

[1] Only three members of the Court join in the opinion in support of the "majority" result.

could not have been raised at any other stage of the proceeding" in the court below. The record is clearly to the contrary. It is undisputed that the challenge to the judgment was never made or even suggested until this appeal was perfected.

It was only after this appeal was taken, and while it was pending, that appellant's counsel, purporting to act for additional defendant Donald Daly and admittedly acting on behalf of Daly's insurance carrier, petitioned the court below to strike the judgment and to stay execution and attachment.[2] The insurance carrier (the real appellant here) did not pursue this petition and the petition remains undisposed of in the court below, just as appellant filed it there. We are consequently without the benefit of an opinion by the trial court on the issue now raised, or on the validity of the judgment as entered. It seems clear that appellant either raised this question too late or his present appeal is premature.

In volume after volume of our reports, this Court has repeatedly insisted that questions not raised in the court below will not be considered on appeal. E.g., *Rimpa v. Bell*, 413 Pa. 274, 196 A. 2d 738 (1964); *Teodori v. Penn Hills School Dist.*, 413 Pa. 127, 196 A. 2d 306 (1964); *Greet v. Arned Corp.*, 412 Pa. 292, 194 A. 2d 343 (1963); *Kilian v. Allegheny County Distrib.*, 409 Pa. 344, 185 A. 2d 517 (1962); *Clark v. Rutecki*, 408 Pa. 25, 27, 182 A. 2d 687, 688 (1962) and cases cited there.

Accordingly, I am at a loss to understand why the "majority" so hastily assumes that this appeal is properly before us on the merits.

---

[2] The petition was prompted by a letter from plaintiff's counsel to the insurance carrier's counsel which stated that satisfaction of the judgment would be sought against Donald Daly's insurance carrier, not against Donald Daly individually.

I must also dissent from the language of the "majority" opinion which "overrules"[3] *Ondovchik v. Ondovchik,* 411 Pa. 643, 192 A. 2d 389 (1963). The "majority" today takes the position that this Court's ruling in *Ondovchik* is contrary to the earlier cases of *Meisel v. Little,* 407 Pa. 546, 180 A. 2d 772 (1962), *Kiser v. Schlosser,* 389 Pa. 131, 132 A. 2d 344 (1957), *Koontz v. Messer,* 320 Pa. 487, 181 Atl. 792 (1935) and *Fisher v. Diehl,* 156 Pa. Superior Ct. 476, 40 A. 2d 912 (1945). Even if it were conceded (and it is not) that such a conflict does exist, I am aware of no decision of this Court, or any other authority, which holds that earlier cases prevail over the most recent decision, and that the latest case must be overruled. Furthermore, when this same Court decided *Ondovchik* in July 1963, that case was not then in conflict with those earlier decisions and is not so now. It is inaccurate to conclude, as the "majority" now does, that those earlier decisions mandate the rejection of *Ondovchik* and a reversal of the judgment entered below.

Moreover, the cases on which the "majority" rely and read as controlling may, at most, have some surface similarities to the instant case, as well as to *Ondovchik.* Nevertheless, the factual and legal differences are so fundamentally dissimilar that the earlier rulings do not govern or should not even persuasively influence the decision to be reached on the merits of the instant case.

Although both *Meisel v. Little,* supra, and *Ondovchik* involved premarital torts, the cases are clearly not in conflict.[4] In fact *Ondovchik* is not only in harmony with *Meisel,* but it is a natural development from the rationale underlying that case. *Meisel* in-

---

[3] Since only three members of the Court, less than a majority, support this language, the language is not decisional.

[4] The writer of the opinion in *Meisel* (1962) joined in the *Ondovchik* opinion (1963).

volved a direct suit by a wife against her husband for an unliquidated claim for damages in tort. The clear rationale of *Meisel* is that such an action is expressly precluded by our statute.[5]

The "majority" also relies on *Fisher v. Diehl,* supra, but the admitted issue in that case was "whether, on petition of the original defendant, the plaintiff's husband can be joined as an additional defendant in her action for personal injuries." 156 Pa. Superior Ct. at 483, 40 A. 2d at 916. The Superior Court held that such joinder was proper. It observed, after an examination of this Court's opinion in *Koontz v. Messer,* supra, that any judgment against the additional defendant would not enure to the benefit of the plaintiff-spouse. Ibid. Surely, that comment does not bind us nor does it control the decision in this case.

Moreover, *Koontz* did not involve the issue of the enforceability of a judgment. It decided that the husband's immunity from suit in tort by his wife did not extend to the husband's master, and that the master could properly seek indemnity from the husband by joining him. It is true that this Court volunteered the observation that the plaintiff-wife could not recover against the additional defendant, her husband.[6] 320 Pa. at 494, 181 Atl. at 795. However, no judgment had been entered against the husband. The present issue was not before the Court.

---

[5] Act of June 8, 1893, P. L. 344, §3, as amended by Act of March 27, 1913, P. L. 14, §1, 48 P.S. §111: "Hereafter a married woman may sue and be sued civilly, in all respects, and in any form of action, and with the same effect and results and consequences, as an unmarried person; but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect and recover her separate property; nor may he sue her, except in a proceeding for divorce, or in a proceeding to protect or recover his separate property . . . ."

[6] See also note 10, infra.

In *Kiser v. Schlosser,* supra, the jury returned a verdict in favor of the wife-plaintiff solely against her husband (an additional defendant) after instructions from the trial judge that such a verdict was permissible. This Court agreed with the lower court's determination that this trial error could be corrected by having the judgment stricken from the record. 389 Pa. at 133, 132 A. 2d at 346. The issue in *Kiser* was not the question presently before us. It dealt primarily with the propriety of the grant of a new trial.

In *Ondovchik* the issue was whether our statute, which prevents direct suits between husband and wife, bars recovery by a plaintiff-spouse on a judgment entered against her additional defendant-husband on a suit begun before the parties were married. Whatever the "majority" thinks of the issue now before us, an examination of the above cases discloses that none of them involved the issue presented in *Ondovchik* and that *Ondovchik* was not controlled by those prior decisions.

Moreover, a study of these cases convinces me that we have never squarely decided the issue now raised directly by the merits of this case. We must now decide whether a wife-plaintiff may have the benefit of a judgment entered upon a jury verdict returned against both the original defendant and her additional defendant-spouse. In any event, none of the cases which the "majority" finds compelling, except *Meisel,* involved either a reference to the statute or an analysis of the policy underlying it. We found such an analysis necessary in *Ondovchik;* it is likewise essential to a proper approach here.

Although this Court's decision in *Ondovchik* rests upon the fact that the cause of action arose and suit was filed prior to coverture, that decision also rests upon the sound ground that no direct suit in tort was instituted by one spouse against the other. Hence, the

proceeding there was not in violation of the statute. Nor did the result reached there offend public policy since the litigation itself did not create or promote domestic discord. One spouse did not testify against the other. Both testified to facts which would have placed liability upon the original defendants. The imposition of liability by the jury was not the product of dispute, contention or any other disruptive circumstance between them.

It is clear here that this is not a case of spouses being adverse parties at the institution of suit or during any phase of the proceeding prior to or after verdict and judgment. Nor is the verdict and judgment a product of direct action by one spouse against the other as was sought in *Meisel*. On the present record, there is not a single, apparent, possible or even suggested element of "potential danger to the marital relationship inherent in such litigation" which the "majority" assumes.

In the absence of any spousal conflict, dissension or disagreement created by the institution of the trespass action itself, there is no basis for concluding, as a matter of fact or policy, that domestic harmony is threatened or destroyed by litigation of the present nature. There is an obvious and significant difference in the impact which direct litigation (such as that in *Meisel*) may have upon a marriage as contrasted to recovery, as here, on a judgment created by third party litigation in which both spouses unite in a joint effort to place liability upon an original defendant.

All that is prohibited by our *statute* is direct suit by one spouse against the other on a tort claim arising out of negligence. In the absence of a showing (or even a suggestion) that the circumstances here in any way offend the *judicially* announced public policy of preventing marital discord, there is no reason for deny-

ing the spouse enjoyment of the judgment. To do otherwise, on this record, is to employ the public policy doctrine where the reason for the rule does not, in fact, exist. So employed, the doctrine is not a concept for preserving domestic harmony, but becomes instead a misdirected application for defeating a fair and just result. Surely, developing concepts of proper responsibility for negligent conduct prompts the rejection of needless extensions of immunities.

Realistically and practically, probably the only time one spouse will seek to secure the benefits of a judgment against the other in a trespass case will be in those instances where, as here, the husband has provided a fund for the satisfaction of such judgments by contract or liability insurance. This presents a situation which is *especially* and *particularly* free from concern that efforts to *satisfy* the judgment entail possibilities of a marital discord. Undoubtedly, a wife is one of the persons a husband most desires to protect by his purchase of insurance, yet this protection is precisely what the "majority" needlessly precludes. The "majority" reaches the same result as if Daly's insurance policy contained a spousal exclusion or an express family exclusionary clause, as was in issue in *Great American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 412 Pa. 538, 194 A. 2d 903 (1963)[7] and *Puller v. Puller*, 380 Pa. 219, 110 A. 2d 175 (1955). I question the wisdom of a rule which needlessly and invisibly inserts a large immunity clause into a policy which, on its face, reads otherwise.

Since it is clear that none of the husband's assets in this case are relied upon for satisfaction of the wife's judgment, there appears no threat or danger,

---

[7] " 'This policy does not apply . . . to bodily injury to . . . any member of the family of the insured residing in the same household as the insured . . .' " 412 Pa. at 540-41, 194 A. 2d at 904.

potential or otherwise, to the marital relationship resulting from the litigation.[8]

Whatever may be the justification for the doctrine of immunity which has been imposed in direct tort suits between spouses, I see no reason for extending that doctrine to the instant case. Just as the "majority decision" adds nothing to marital harmony, so too, the judgment which the "majority" reverses contributes nothing to marital discord. The "majority" adds immunity where none is needed and where none is provided for in the husband's contract for the protection of his wife. The "majority" extends interspousal immunity to an area never intended to be included within that doctrine. It ultimately fails to recognize the realities of the present situation and relies upon a fictional view of the rights and relationship of the litigants.

The conclusion which the "majority" reaches breeds anomalous results. The "majority" acknowledges that if a verdict is entered against both the original defendant and the additional defendant-spouse, the original defendant may enforce a right of contribution from the spouse.[9] The result is that a wife may proceed

---

[8] Furthermore, nothing appears to suggest collusion or to indicate that the additional defendant, in seeking to impose liability upon the original defendant, failed or refused to cooperate with his carrier.

[9] It is true that no right of contribution has thus far been enforced in this case. This is so because original defendant's insurance coverage is apparently less than his half of the total judgment. However, we have no way of knowing whether the original defendant has (or may soon have) additional assets. Totally aside from this, the fact that no contribution has so far been elicited in this particular case is a purely fortuitous factor. The judgment could just as well have been for a lesser amount which the original defendant's assets, or insurance, would have covered. Or, the original defendant might himself have had more extensive assets. Regardless of the factual situation in this particular case, the contradiction which the "majority" result precipitates still exists and will manifest itself in a great many other cases.

against a third party, recover her full judgment, and the third party can then recover half of that judgment from the plaintiff's spouse. In that event, the wife receives the full judgment even though half of the funds, in reality, have come as a result of the judgment against her spouse. On the other hand, the "majority" now holds it is not permissible to allow a wife to immediately recover half the damages from the third party and half from her spouse, the additional defendant. What is precluded directly is permitted by circuity. Marital discord, if any, is no more present in one route of recovery than in the other. Surely, reasoning which leads to so curious an inconsistency should not be the foundation for a rule of law. It lacks the fundamental soundness and reality expected of a prevailing legal principle.[10]

The statutory prohibition against direct interspousal suits in trespass first enacted in 1893 (and amended in 1913) surely does not require that we today extend immunity beyond the express language of the statute for the benefit of some interest other than the spouses.

I am unable to find any sound, acceptable basis for denying the wife-plaintiff all the benefits of the judgment entered upon the verdict in this case. Her judgment was secured and entered without violation of statute or offense to public policy. Hence, I conclude

---

[10] It should also be noted that, in the *Koontz* situation, a master who is sued on a respondeat superior theory may join the plaintiff's husband as an additional defendant if the husband is the servant whose negligence is alleged to have caused plaintiff's injuries. This joinder is allowed because the servant-husband may be liable over to the original defendant (the master) for all damages. In this situation, the wife collects her total judgment from the master, who may then recover the total amount of the judgment from the assets of the husband. Thus, in reality, the wife receives the full benefit of her total judgment by enforcement of the judgment, ultimately, against her husband.

546

that this record does not present a case for the application of interspousal immunity.  No spouse has claimed any; no other interest should be permitted to successfully assert any.

I dissent.

Mr. Justice MUSMANNO joins in this dissenting opinion.