**Sale of Pleasant Valley Manor**

*Elmer D. Christine* and *Ronald E. Vican,* for petitioners.

WILLIAMS, P.J., June 18, 1975.—A majority of the county commissioners request this court to approve the sale of 14.9 acres of land on which there is located a county-owned nursing facility known as Pleasant Valley Manor. The facility consists of two units, a building constructed in 1925 containing 17 beds and an addition constructed in 1963 containing 54 beds. The proposed transferee is Pleasant Valley Manor, Inc., a nonprofit corporation. The stated purpose of the transfer is "for the reason that Pleasant Valley Manor, Inc. will qualify for skilled and intermediate care of patients from the Commonwealth of Pennsylvania, Department of Welfare, for which Monroe County, as the present operator of the Manor, does not qualify."

Pleasant Valley Manor, Inc., is a nonprofit corporation organized for the purposes "(a) To promote the health and welfare by acquiring, holding, constructing, improving, maintaining and operating a health care center or centers in Monroe County".

By the terms of its charter, the corporation is managed by three trustees appointed by resolution of the county commissioners. The charter provides:

"in the event of the entire or partial termination, dissolution or winding-up of this corporation in any manner or for any reason whatsoever, the assets of the corporation which remain after payment of all liabilities of the corporation shall be distributed to, and only to, the County of Monroe of the Commonwealth of Pennsylvania for exclusively public purposes."

If the sale receives judicial approval, Pleasant Valley Manor, Inc., plans to proceed immediately to construct a new 60-bed addition to the manor. Upon completion of the addition, the 17 beds in the old wing will no longer be used, leaving available 114 beds.

To finance the proposed construction, the Manor Corporation proposes to enter into an installment sale agreement with the Monroe County Industrial Development Authority, organized by the County Board of Commissioners. The essential features of this transaction will be as follows:

(1) The authority will issue its bonds in a sufficient amount to pay the cost of constructing the new wing and the costs of financing;

(2) the purchase price is $1,247,095.39, of which $1,200,000 is for land and improvements and $47,095.39 is for capital assets not covered by the real estate appraisal. The purchase price is payable in 30 annual installments of $41,569.85, without interest on unpaid balances. The authority's obligation to the county will be payable only out of payments made to the authority received from Pleasant Valley Manor, Inc., and will be subordinated to the authority's obligation on the bonded indebtedness.

(3) The County of Monroe will execute a guaranty agreement thereby assuring that sufficient moneys are available in each and every year to pay debt service on the bonded indebtedness.

The county seeks court approval of the transfer of the real estate to Pleasant Valley Manor, Inc., as required by the Act of August 9, 1955, P. L. 323, sec. 2306, et seq. of the County Code, 16 PS §2306 et seq.

While the County Code requires the court, after hearing, to either approve or disapprove the sale, it fails to define any standards to guide the court in making its determination. However, our appellate

courts have, on a number of occasions, defined the scope of judicial review of the actions of governmental boards.

In Flaherty v. Allegheny Port Authority et al., 450 Pa. 509, 516, 517 (1963), the Supreme Court, speaking through Mr. Chief Justice Jones, said:

"Judicial interference with the actions of municipal authorities should not be undertaken in the absence of proof of an abuse of power, bad faith, fraud or arbitrary and capricious action; the courts should be loathe to review the details of the effectuations of actions of municipal authorities. City of Philadelphia v. Southeastern Pennsylvania Transportation Authority, 441 Pa. 518, 272 A. 2d 921 (1971); Weber v. Philadelphia, 437 Pa. 179, 262 A. 2d 297 (1970); Eways v. Board of Road Supervisors, 422 Pa. 169, 220 A. 2d 840 (1966); Crawford v. Redevelopment Authority, 418 Pa. 549, 211 A. 2d 866 (1965); Robinson v. City of Philadelphia, 400 Pa. 80, 161 A. 2d 1 (1960); Hyam v. Upper Montgomery Authority, 399 Pa. 446, 160 A. 2d 539 (1960); Parker v. City of Philadelphia, 391 Pa. 242, 137 A. 2d 343 (1958); Blumenschein v. Housing Authority of Pittsburgh, 379 Pa. 566, 109 A. 2d 331 (1954), cert. denied, 350 U.S. 806 (1955); Lazrow v. Philadelphia Housing Authority, 375 Pa. 586, 101 A. 2d 664 (1954). While discretionary power in the hands of a municipal authority or body does not immunize it from judicial review, the scope of that review must be limited to the determination of whether the exercise of discretion has been flagrantly abused. '[J]udicial discretion may not be substituted for administrative discretion.' Blumenschein v. Housing Authority of Pittsburgh, 379 Pa. 566, 573, 109 A. 2d 331, 335 (1954). Where complex questions of technology and finance are resolved by administrative decision, judicial review should be particularly restrictive."

The scope of our review must, under that ruling, be limited to the following issues: (a) fraud; (b) bad faith; (c) arbitrary and capricious action; (d) flagrant abuse of power.

There is not a scintilla of proof of fraud, bad faith or arbitrary and capricious action. We are limited to the single issue as to whether the objectors have shown a flagrant abuse of power.

In determining this issue, we are controlled by the following legal principles:

(a) We must presume that the action taken by a governmental agency is for the community good and will not be overturned unless it is shown that the agency acted fraudulently, in bad faith or abused its powers: Parker v. Philadelphia, 391 Pa. 242, 248.

(b) The objectors have the burden of overcoming this presumption by credible evidence: Philadelphia to use of DePaul v. Philadelphia Authority for Industrial Development, 230 Pa. Superior Ct. 226, 229 (1974).

(c) This court cannot substitute its own judgment for that of an appropriate governmental body, even though our judgment may differ from the judgment of such governmental body: Parker v. Philadelphia, supra.

(d) Since an intricate financial plan is here involved, our power of review is particularly restricted: Flaherty v. Allegheny Port Authority, supra.

The county commissioners are obligated by law to provide nursing home care to indigents. See 16 PS §2163, which reads:

"The county commissioners of counties of the fourth, fifth, sixth, seventh and eighth classes shall have the power and their duty shall be: (1) to erect, equip, maintain, repair, alter and add to institutions for the care of dependents, and to equip, maintain, cultivate and improve farms. . ."

Three witnesses objected to the sale of the county property to the Pleasant Valley Manor Corporation, County Commissioner, Nancy Shukaitis, George Levin and Brendan V. Higgins.

Mrs. Shukaitis' position is:

(a) The proposed plan gives an appearance of the county separating itself from the operation of the manor, while, in fact, it does not because of the guarantee which the county will make to cover operating deficits.

(b) That since the county will guarantee payment of the bonds and interest thereon, a future financial burden may be imposed on the county.

(c) That county assets will be depleted by the sale.

(d) A legislative committee is conducting research to establish current audited costs per diem of nursing homes, in order to arrive at "reasonable costs" which are due to be reimbursable after appropriate legislative action.

None of these reasons show that the majority action of the commissioners constitutes a flagrant abuse of power. We have heretofore shown the statutory duty of the county commissioners to provide nursing home care for indigents. Since the commissioners have a primary liability to furnish such care, certainly assuming secondary liability arising out of the proposed guarantee of operating deficits and debt service payments on the bonds, in no manner places upon the county a greater financial burden than presently rests upon it. In fact, it could be argued that the county burden is diminished when it exchanges a primary liability for one that is secondary. We see no apparent depletion of county assets. A present non-income producing asset, will be replaced by the appraised market value of the assets sold.

While this purchase price is payable annually over 30 years, without interest, if the county retains the real estate with its improvements and directly obligates itself to pay the debt service, the assets will not produce income to the county, and the county becomes primarily liable instead of secondarily liable for the bonded indebtedness. That the legislature may, at some future time, change the existing law, is too tenuous and problematical on which to base a finding of flagrant abuse of power. No matter how persuasive these objections may be, they fall short of showing the flagrant abuse of power necessary to deny the petition.

Mr. Levin suggests the county lease the manor facilities to the corporation at a fair rental value.

While such a suggestion may be a salutary one, yet this is a matter of judgment and, again, does not establish a flagrant abuse of power.

Mr. Levin points out that the county will receive no interest on the deferred purchase price if the sale is consummated. This is a bothersome aspect of the sale, but there do exist offsetting circumstances. The corporation is managed by trustees appointed by the county. The corporation assets will revert to the county if the corporation is dissolved. The corporation is performing a duty, otherwise imposed by statute upon the county. So far as county liability is concerned, since the Pleasant Valley Manor, Inc., has no assets or taxing power, it cannot borrow money except on the credit of the county. If the construction is to go forward, the county must obligate itself either directly or indirectly. As we see it, to charge or not to charge interest, or to assume direct or secondary liability, is judgmental in nature, and this court may not substitute any

contrary judgment it may have for the judgment of a governmental body.

Mr. Higgins suggested that the commissioners seek to finance the construction of the new wing under the Hill-Burton Program.

Here again, this is a matter of judgment and this court is without authority to substitute its judgment for that of the county commissioners. To do so would constitute the court a super-board of commissioners which would violate the constitutional principle of separation of powers.

Applying the law to the evidence, we find no justification for this court to rule that the legal presumption that the majority action of commissioners was for the public good, has been overcome; nor do we find any legal basis on which to predicate a finding that the majority action of the commissioners constituted a flagrant abuse of power on the part of the two commissioners who voted in favor of the resolution.

Accordingly, it is our duty to approve the proposed sale.

## ORDER

And now, June 18, 1975, the petition is granted and the county commissioners are authorized to sell 14.9 acres of land situated in Hamilton Township, Monroe County, Pa., as described in "Exhibit B" attached to the petition, together with the improvements thereon, to Pleasant Valley Manor, Inc., for the purchase price of $1,200,000, together with certain capital assets of the book value of $47,095.39, or a total of $1,247,-095.39, payable in 30 equal annual installments of $41,569.85 each, without interest on the unpaid balances.